## JOHNSON *et al* vs. LOVETT.

The owner of property out of possession can only recover, in an action of Trespass, for an injury done to the reversion.

Trespass, in the Superior Court of Spalding county. Tried before Judge CABANISS, at the May Term, 1860.

Mary A. Wiggins, as executrix of William W. Wiggins, deceased, commenced an action of trespass in Spalding Superiour Court, against John P. Lovett, to recover damages for injuries alleged to have been inflicted by the defendant upon the person of a negro woman slave, by the name of Dinah, belonging to the estate of said deceased, by which said slave was injured, and her services lost to the plaintiff.

Pending the action, Mary A. Wiggins married, and Thomas C. Johnson was appointed administrator *de bonis non* of the estate of said deceased, and made party plaintiff to said action, in lieu of the said Mary Wiggins, whose letters abated by her marriage.

On the trial of said case the following evidence was introduced, to wit:

On or about the 15th of July, 1858, it being the Sabbath day, the defendant inflicted upon a negro woman named Dinah, belonging to the estate of William W. Wiggins, deceased, a severe whipping, with a cowhide, and by kicking her in the abdomen, and knocking out one of her teeth, and otherwise beating and bruising said negro; that the whipping commenced in the public streets of Griffin, and was continued in the kitchen of defendant; that the defendant was aided by two other negroes, one of which defendant ordered to take hold of Dinah's feet, and the other to take hold of her head; that when defendant first commenced whipping the negro she seemed to resist, or defend herself; that the negro was seriously injured, and was confined, in consequence of it, for about two weeks, but afterwards moved about and seemed as sprightly and as well as before the whipping; that the defendant gave as an excuse for the whipping, that the negro Dinah, who at the time pursued the business of a washerwoman, had some dresses to be washed for defendant's wife and another lady at his house, and that when the dresses were sent for by another servant

girl, she returned and reported a message from Dinah, that she would not send the dresses until she had got them done, and that forty devils and the defendant himself could not make her send them until she got ready; that the negro Dinah was, at the time of the whipping, hired to George Johnson, and that the physician's bill for attending her during the sickness, consequent upon the whipping, was about fifty dollars, and defendant had no control over the negro.

During the progress of the trial counsel for the plaintiff proposed to ask William R. Phillips, one of the witnesses who testified in the case, and who saw the whipping: "What damages, in his opinion, the plaintiff sustained by the injuries done to said slave, by the whipping?" This question was objected to by the defendant's counsel, and the objection was sustained by the Court, and the answer repelled; and plaintiff excepted.

The presiding Judge read from the Penal Code of this State, as follows: "Any person except the owner, overseer or employer of a slave, who shall beat, whip or wound such slave, or any person who shall beat, whip or wound a free person of color, without sufficient cause or provocation being first given by such slave or free person of color, such person so offending may be indicted for a misdemeanor, and on conviction shall be punished by fine or imprisonment in the common jail of the county, or both, at the discretion of the Court; and the owner of such slave, or guardian of such free person of color, may, notwithstanding such conviction, recover in a civil suit, damages for the injuries done to such slave or free person of color." Charged the jury that said clause of the penal Code, so read, was the law of said case. His honor also charged the jury: "That the measure of damages in said case was only the actual damage done to the slave, and the physician's bill."

To the latter portion of said charge the plaintiff excepted.

The jury returned a verdict for the defendant, with cost of suit.

Counsel for the plaintiff then moved for a new trial, on the following grounds:

1. Because the Court erred in not permitting the plaintiff's counsel to prove by the witness, Phillips, the amount of damage, in his opinion, the plaintiff sustained, by reason of the beating of said slave.

2. Because the Court erred in charging the jury that the measure of damages was only the actual damage done to the slave, and the physician's bill.

3. Because the verdict of the jury was against the weight of evidence, and without evidence, and contrary to the law of the case.

4. Because the plaintiff has discovered, since the trial of said case, that one Mrs. Thomas was present when the negro of defendant came for the dresses belonging to some of defendant's family, on the morning of the day of the beating, and that the said Mrs. Thomas heard the message sent by Dinah to defendant, and that Dinah did not send the message which was communicated to defendant, and relied on by him as a provocation for beating the slave, Dinah.

The facts set out in the last ground of the motion for a new trial were not verified by the affidavit, either of the witnesses or of the plaintiff, but counsel for the plaintiff stated in his place that he expected to make the proof stated in said last ground; that the witness, Mrs. Thomas, then lived in the county of Haralson, and that it was impossible to obtain her affidavit in time for the hearing of the motion for a new trial; that the plaintiff also lived in another county and was not present at the trial, and his affidavit could not be obtained in time for the hearing of the motion.

In addition to this statement of counsel, they presented the affidavit of one James Davis who states that he heard the witness, Mrs. Thomas, assert the facts contained in said last ground in said motion for a new trial.

The motion for a new trial was overruled, and this decision is the error complained of in this case.

DOYAL & BECK, for the plaintiff in error.

ALFORD, PEEPLES & CABANISS, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

This was an action of trespass brought by the owner of a female slave, to recover damages of the defendant, for the unlawful beating of said slave. The defence was that there was sufficient provocation given to justify the whipping.

Johnson et al. vs. Lovett.

The jury rendered a verdict for the defendant. A new trial was asked and refused; and this is the error assigned for our revision.

The woman was employed to do the washing of the family of the defendant. The defendant alleges that she returned an insolent response by a servant, sent on Sunday morning to bring home some dresses, and for this he repaired to the neighborhood of the girl, and finding her in the street he attempted to force her into the kitchen, and upon her resisting his attempts to drag her into the house, he inflicted upon her a severe beating in the street; and after getting her within doors he continued the beating, inflicting blows and bruises upon various parts of the body and head, knocking out one tooth, etc.

The woman was confined to her bed, by reason of this abuse, for about a month, her situation requiring the services of a physician whose medical bill amounted to about fifty dollars. The Court charged the jury that the plaintiff was entitled to recover for the actual damage done the girl; and for the doctor's account.

A Mr. Phillips was examined as a witness on the trial, and after testifying to the facts of the beating, of which he was an eye and ear witness, he was asked to give his opinion as to the damage the girl sustained. The question being objected to, was repelled by the Court, and this decision is excepted to as error.

Amongst other grounds taken in the motion for a new trial, was that of newly discovered evidence. Without further remark, I shall dismiss this ground by stating that it does not come up to the rule prescribed by the Court in such cases. The excuse given is, lack of time to procure the necessary affidavits; but no motion was made to postpone the rule, to enable the plaintiff to supply this acknowledged defect. I may add that the testimony, if procured, was negative in its character, and would have averted nothing.

Upon the threshold of this case we state, as a Court, that there is much to condemn in the conduct of the defendant. When insults are given personally by a slave, it is right to punish instantly; and the party offended need not delay until the owner can be consulted. The condition of our society demands this promptitude of proceeding. But in a

case like this there is no need for this hot haste; but, on the contrary, altogether better to proceed more carefully and not to act without consultation with the owner or employer of the slave. It may be that in this case the information received through the servant of the defendant may not have been true. Hence, more caution and circumspection was necessary. The servant who communicated the objectionable message may have been actuated by ill-will toward the woman. It is dangerous, in this hasty way, to act upon the *exparte* representations of another servant.

Again: we say emphatically, that, considering the day and the place upon which this violence was inflicted—on the Sabbath morning, in the public streets of the city—the conduct of the defendant was altogether unbecoming. Moreover, the punishment, itself, was both indecent and excessive, and can not be justified, considering that the message, delivered to the defendant was not misunderstood nor misrepresented. The description of this beating, both as to its extent and the mode of inflicting, is alike revolting to the feelings of decency and humanity.

But we sit here to administer the law of this case; and to it I shall briefly address myself.

It will be remembered that this girl was hired out at the time the alleged trespass was committed, to a Mr. George Johnson, and was not in the possession of the plaintiff in this action, who represents the estate of Wiggins, to which the girl, Dinah, belongs. The suit, then, is brought, not by the *hirer,* but the *owner.* The owner can only recover for some permanent injury done to his slave; or, as the books express it, in speaking of a horse as any other personal property—for an injury done to the *reversion.* When the owner is in possession of personal property, he can recover for present service, physician's bill, etc.; but that is not this case.

Does the proof show there was any permanent injury done this woman? The doctor who attended her first thought there was, from the character of the beating. He testifies, however, that he saw her afterwards, and she appeared to be going about as sprightly as ever. If the fact existed, evidence could readily have been adduced to prove it. The failure to bring forward such testimony is an admission that no lasting injury was done. We can hardly venture to con-

sider the loss of a tooth as diminishing, either the actual or marketable value of the woman. The maxim, *de minibus,* will not apply in such a case.

This being so, what foundation is left to warrant a verdict in favor of the owner? None that we can see. The defendant may still be liable to the hirer, provided the claim be not barred, for loss of service and the physician's bill; or he may be made criminally responsible for the beating, provided it was cruel and excessive, and without sufficient provocation. We express no opinion upon these points.

It only remains to consider whether the Court was right in ruling out, on the trial, the interrogatory propounded to the witness, Phillips. Having already stated all the facts as to the whipping, he was asked to give his opinion as to the damage done the girl? The Court has, in many cases, permitted witnesses to give their opinion in connection with the facts to which they have testified. But the question, as put without qualification, was too broad. Can any one doubt that the witness would have included in his reply the temporary injury as well as the permanent? Indeed his answer would, most likely, have been influenced, mainly, by the results; in other words, to the loss sustained by the hirer. The inquiry should have been made definite, viz.: What was the permanent injury to the woman? He proved none. The form of the question, then, was objectionable, and properly ruled out by the Court. He might also have embraced in his censure many fanciful and imaginary reasons as the measure or ground of damages, not authorized by law, as the facts of the case, and yet the jury would not have been enabled, by the generality of his answer, to have judged of the sufficiency of the witness' reasons.

The jury were already in possession of all the witness knew about the matter—for he had been examined fully—and could more properly estimate the damages than he could.

Upon the whole, we see no ground for reversing the judgment of the Circuit Judge denying a new trial. The charge of his Honor was more favorable to the plaintiff, as *owner,* than he was entitled, upon the law of the case. The jury declined acting upon it, and their finding ought not to be disturbed.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.