MARTIN *et al.* v. BROWN *et al.*, by next friend.

1. Equity will not entertain jurisdiction of a suit by a solvent individual to marshal his assets, to collect various items severally demanded of some of the defendants, and to adjudicate the liability or non-liability of his property to disassociated claims of other defendants.

2. In a suit for equitable relief the union of distinct causes of action, one arising out of tort, and the other based on contractual liability, renders the petition multifarious.

3. A petition by five plaintiffs, wherein a cause of action in favor of all of them against some of the defendants is joined with a cause of action in favor of four of them against other defendants, is multifarious. The coincidence of some of the defendants to both causes of action does not relieve the petition of this infirmity.

4. An injunction will not be granted to preserve the status upon which to decree relief upon the various unrelated matters which render the petition multifarious.

Argued July 2,—Decided November 15, 1907.

Injunction and receiver. Before Judge Spence. Calhoun superior court. February 29, 1907.

Herbert Brown, Louis Brown, Kathleen Brown, Mary Brown,

and Ruth Madden, minors, by their next friend, filed an equitable petition in the superior court of Calhoun county, against R. W. Martin, J. O. Exum, Mrs. W. F. Madden, B. M. Lee, Sealy & Company, The Cowart Loftin Company, W. L. Godwin, The Dawson Naval Stores & Lumber Company, L. H. Davis, sheriff of Calhoun county, D. W. James, and the Bank of Randolph, defendants being residents of Calhoun, Early, Terrell, and Randolph counties. The allegations and prayers of the petition are substantially as follows: On October 6, 1893, A. J. Bell, who was the father of plaintiffs' mother; then Mrs. Rilla R. Brown, now the defendant Mrs. W. F. Madden, made and delivered a deed, wherein it is recited "that the said Andrew J. Bell, for and in consideration of the natural love and affection he has for his daughter, said Rilla R. Brown, hereby grants, gives, and conveys to said Rilla R. Brown, her heirs and assigns," certain described lands, aggregating 1,778 acres, together with certain mules, wagons, plantation implements, etc., then on the land; "to have and hold the same unto the said Rilla R. Brown for and during the period of her natural life for the comfortable support and maintenance of the said Rilla R. Brown and her children, and at her death the said property to vest in her children, share and share alike, forever in fee simple." Herbert Brown and Louis Brown were in life at the time this deed was made, the remaining plaintiffs having been born since its execution and delivery. Brown died December 12, 1901, and Mrs. Brown subsequently married her present husband, Madden. Since December, 1901, the property and its proceeds have been managed and controlled by Mrs. Madden, "directly or through her agents and assignees, or those who had been such and become tort-feasors as hereinafter set out." In addition to the property described in this deed, and its proceeds, Mrs. Madden as administratrix of her former husband, E. H. Brown, and as natural guardian of all of plaintiffs, except the infant Ruth Madden, has since his death, until March 6, 1906, "in like manner managed and controlled . . the property which said plaintiffs inherited from the said Brown, their father," consisting of lands in Calhoun, Baker, and Early counties, a hotel in Arlington, and other property of the value of $10,000. On March 9, 1906, R. B Martin qualified as guardian of all of the plaintiffs except Ruth Madden, and gave bond with J. S. Cowart and J. O. Exum as sureties in the sum of $16,000.

Since his appointment as guardian he has also managed and controlled all of the property of Mrs. Madden and plaintiffs, and still manages and controls the same.

On March 26, 1904, Mrs. Madden entered into an arrangement with the defendant Godwin, whereby he claimed to have been made her general agent both individually and as representative of plaintiffs, and as such agent managed and controlled all of the property until September 25, 1905    During this time Godwin entered into an arrangement with the defendant Lee, whereby Lee claims to have rented the "Godwin-Cordray place" for five years from January 1, 1904, for four bales of cotton a year, although the same is well worth eight bales per annum; and Lee has paid these rents to Mrs. Madden or her agents, "and the same have not been applied to the proper use of plaintiffs, who are the donees and tenants in common under said deed of said gift from A. J. Bell." Lee is still in possession under his lease. "Plaintiffs charge that said leasing was without authority of law, and in violation of plaintiffs' rights; and the said Godwin and the said Madden and the said Lee, by reason of their said acts in reference to said place, have injured and damaged plaintiffs in the sum of $1,000, . . and have diverted that amount from the use of petitioners," and they pray for an accounting, and a judgment for the rents paid to Mrs. Madden, and for actual damages, and for a decree so shaped as to adjust the equities of the parties, and that he be enjoined from continuing on the land. On February 10, 1904, Godwin, claiming to act as Mrs. Madden's agent, made an arrangement with the Moye Naval Stores Company, by which this company claims to have purchased the timber on certain lands embraced in the Bell deed, and afterwards entered thereon and boxed and worked the timber for turpentine purposes for a time not stated, and subsequently transferred this lease or purchase to the Dawson Naval Stores Company for $3,000, and the latter company is now cutting and removing the timber from this land. It is alleged that Mrs. Madden, Godwin, the Moye Company, and the Dawson Company, by virtue of these alleged tortious acts, have injured and damaged petitioners in the sum of $5,000, and plaintiffs pray for an accounting, and a judgment for actual damages, and for an injunction against the Dawson Company restraining it from cutting or removing timber or lumber from the land. The Dawson Company also entered into

an arrangement with Mrs. Madden for the purchase of certain other timber interests on other lands embraced in the Bell deed, which was transferred to Sealy & Company, who worked it for turpentine, and removed all the timber, thereby damaging plaintiffs in the sum of $2,500; and they pray for an accounting and a judgment against Sealy & Company for the value of this timber, and for an injunction against the Dawson Company and Sealy and Company, restraining them from continuing on the land, and from cutting the timber thereon, and that their pretended leases be delivered up and canceled.

Martin, since taking charge of the property in 1906, has continued to collect all the rents and profits of the yearly value of $3,000, and converted the same to his own use. As guardian he fails and refuses to make returns to the ordinary as required by law. In addition to these, Martin and Exum, his son-in-law (who is charged to be in collusion with Martin), have sold off and received the proceeds of certain timber interests to parties unknown, and Martin has admitted receiving $444 from such sales, but has failed to account therefor. Martin has also converted certain mules and live stock of petitioners to his own use, and mingled them with his own so as to make identification difficult, if not impossible. He has allowed the property to run down, the lands to be improperly cultivated, the stock to be improperly kept, and the buildings and fences to become dilapidated. He has failed to pay the taxes, but has allowed tax executions to be issued against the property, sold the timber on part of the land belonging to the estate of E. H. Brown, and committed waste. Plaintiffs (except Madden) pray for an accounting, and for a judgment against Martin and his sureties on his bond for the amount found to be due by Martin. Martin, as transferee, holds a mortgage given by Mrs. Madden to A. D. Harris, for $3,500, on certain described lands (embraced in the Bell deed), which mortgage it is alleged Mrs. Madden had no right to make except to a one-fifth undivided interest in the life-estate, and her acts of waste have damaged plaintiffs in an amount exceeding her interest in this life-estate, and she has forfeited her life-estate; and a decree is prayed, adjudicating that she has no interest in the property subject to the lien of the mortgage, and that her life-estate be declared forfeited. It is alleged that although this mortgage,

and all other claims that Martin holds against plaintiffs or their mother, have been fully paid by the proceeds of their property which has come into his hands, he is proceeding to advertise the mortgaged property for sale under a power contained in the mortgage, stating in the advertisement that he will make a deed conveying a fee-simple title to the purchaser in the name of Mrs. Madden, his purpose being to bid in the property either directly or through his agent, for an insignificant amount, and to secure a deed to the same, which would create a cloud upon plaintiffs' title. They pray that he be enjoined from proceeding to advertise or sell the property, and that he be compelled to surrender up his mortgage for cancellation.

Martin also holds an insurance policy on the life of Mrs. Madden for $10,000, as collateral for the amounts he claims she owes him, the premiums on which have been paid by trust funds belonging to plaintiffs, and they pray that he be required to deliver this policy to them.

On October 14, 1905, D. W. James sued out an attachment against Mrs. Madden for $1,655.50, and had the same levied on two brick stores in the town of Arlington, and upon certain lands embraced in the Bell deed. These stores were built on land purchased with trust funds belonging to plaintiffs (except Madden), and paid for with similar trust funds. This property is alleged not to be subject to the lien of the attachment; and they pray that their equitable title therein be set up in the present proceeding, and that the attachment proceedings be enjoined. Mrs. Madden had by deed conveyed these stores to the Bank of Randolph as security for a pre-existing debt, with full knowledge on the part of the bank of plaintiffs' equities. They pray that this deed be decreed to be null and void, and that it be surrendered for cancellation.

In December, 1906, the Cowart-Loftin Company obtained a judgment against Mrs. Madden on an attachment previously sued out for $800, which has been levied on certain real and personal property embraced in the Bell deed, which is advertised for sale on the first Tuesday in February, 1907. They pray for a decree declaring this property to be the property of plaintiffs, and that the sale be enjoined.

Notwithstanding Martin's agency has been revoked, he and Exum

continue to hold this property, renting and controlling it, and they are wasting and mismanaging it in such a way that the whole or a large part of its income will be lost unless the relief herein prayed be granted, and there is immediate danger of waste and destruction of all their property which may be in his hands or those of the other defendants. "Plaintiffs show, that all of the matters and things mentioned herein relate to the estate of plaintiffs in the hands of said Martin and said Mrs. Madden and their joint tort-feasors; and that it is necessary to have all the parties defendants named herein as parties to this suit, that the assets of said estate of plaintiffs be properly marshaled, and all the equities belonging thereto be adjusted, and plaintiffs' rights and others be protected." The further prayers are that the assets of plaintiffs' estate be marshaled; and all parties defendant be required to set up their rights with reference thereto in this case; that a receiver be appointed to take charge of the assets; that plaintiffs have judgment recovering from each of the defendants such of their property as may be shown to be in their hands, for process, and such other and further relief as they may be entitled to.

At the interlocutory hearing the defendants demurred and filed their answers, and proof was submitted by both plaintiffs and defendants. An injunction was granted as to certain defendants, and a receiver appointed; and to the judgment thereon defendants excepted.

*Pottle & Glessner, Calhoun & Lyon, Smith & Miller,* and *S. A. Roddenbery,* for plaintiffs in error.

*Pope & Bennet* and *J. C. Boynton,* contra.

EVANS, P. J. A ground of demurrer urged at the interlocutory hearing was that the petition was multifarious, and the writ of injunction should be denied on this account. An injunction will not be granted to preserve the status upon which to decree relief on the various unrelated matters which render the petition multifarious. *White* v. *North Ga. Elec. Co.,* 128 *Ga.* 539. So that our investigation of the alleged errors of the trial court may well begin at this point. Multifariousness is defined in *Nail* v. *Mobley,* 9 *Ga.* 280, to be "the improperly joining in one bill distinct and independent matters, and thereby confounding them,—as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of

several matters of a distinct and independent nature against several defendants in the same bill." The latter phase of this definition finds terse expression in the Civil Code, §4938: "Distinct and separate claims of and against different persons can not be joined in the same action." Under the uniform procedure act of 1887, a plaintiff may in the same suit unite a legal and an equitable cause of action, and have appropriate relief. Civil Code, §4937. As liberal as our system of pleading is, we have not reached the extent that a litigant may hale all persons against whom he has a complaint into court in one suit, and demand separate relief against each, upon entirely disassociated and unrelated matters. However desirable it may be to a litigant to bring into one forum at the same time all persons against whom he has a grievance, without regard to their residence, or the nature of the claims severally demanded, his convenience can not be consulted to the sacrifice of the law and the rights of the adverse parties. Objection to a petition on the ground of multifariousness is not a favorite of the law. Equity delights in the completeness of its relief; and when it acquires jurisdiction for one purpose, it will generally afford full relief to all the parties. But before equity will hearken to the prayer of a litigant, it will first ascertain from the pleadings its jurisdiction to grant the relief prayed. The petition in the present case is framed on the theory that the defendants have, in the manner set out, unlawfully deprived plaintiffs of some of their property, and have damaged them by neglect;—not that all of the defendants have concurred in the various acts of which complaint is made; but that some one or other defendant in some way or other has either damaged their property, or is threatening to do so, or has deprived them of some of their property, or has become liable to them because of neglect of duty. This petition does not fall within the scope of the case of *Conley* v. *Buck,* 100 *Ga.* 187, where it was ruled that a petition would not be multifarious, though it concerned things of different natures against several defendants whose rights were distinct, if it set forth one connected interest among them all, centering in the point in issue in the cause. The probable purpose of the pleader in praying that the plaintiffs' property be marshaled, and its status with respect to the various claims of the defendants be adjudicated in their several relations to the plaintiffs' property, was to supply

that element so prominent in the *Conley* and *Buck* case, viz.: the common connection of the various defendants' acts with the plaintiffs' property, as affording one general right to equitable relief. We have been unable to find any authority for the proposition that a solvent person may come into a court of equity, and ask the court to adjust in one suit his general business affairs, so that he may know what the net result would be. It was decided by this court that a corporation can not, as a plaintiff, maintain an equitable suit to marshal its own assets. *Steele Lumber Co.* v. *Laurens Lumber Co.,* 98 *Ga.* 329. The reason for the refusal of a court of equity to take charge of the assets of a solvent individual and adjudicate what may or may not be a claim against his property is plain. If such practice were allowable, the court would be called upon to administer the property of any solvent business man who found himself unable to conveniently deal with his own affairs. Creditors may in a proper case marshal the assets of an insolvent debtor; and administrators of an insolvent intestate, where the affairs of the estate are in a complicated condition, may maintain a suit to marshal the assets of their intestate. But courts will not exercise any species of judicial paternalism over the business affairs of a solvent litigant, so as to take charge of his property and untangle its complexities, and relieve him of the burden of a laborious, and perhaps disagreeable task. The untenableness of this proposition becomes more manifest when several persons, owning distinct properties, join in such a petition.

If we apply either test involved in the definition given in *Nail* v. *Mobley,* supra, the petition in the instant case must be held to be multifarious. An analysis of the petition will demonstrate, (1) the improper joining in one petition of distinct and disconnected matters, thereby confounding them, and (2) the demand of several matters of a distinct and independent nature against several defendants. We will apply the first test. The plaintiffs are minors, and they ask to recover of some of the defendants damages to the freehold resulting from spoliation of the timber; these defendants are declared to be joint tort-feasors. They ask also that they have judgment on a guardian's bond, against the guardian and his sureties, for an alleged devastavit of the guardian. Here is a union of two entirely distinct matters, and not only are they disconnected from each other, but the alleged liability in one in-

stance is ex delicto, and in the other it is based on contract. Now apply the second test. All the plaintiffs take as remaindermen under the Bell deed. The deed conveys the land to Mrs. Madden, mother of plaintiffs, for life, with remainder, over to them on her death. They are not joint tenants with their mother in the life-estate, and at most they could only claim a support and mainte-nance as a charge upon the land. Whether the terms of the deed charge a support of the remaindermen upon the life-estate is not decided, as it is not necessary for the adjudication of the question in hand. Hence, as to the realty passing by the Bell deed, all the plaintiffs are interested in the protection of the remainder estate. But so much of the realty and personalty included in the petition as was inherited by the four plaintiffs (the Brown children) from their father belongs exclusively to them, and their coplaintiff, Ruth Madden, has no interest therein. Then, clearly, the petition is multifarious, because all the plaintiffs are claiming relief against some of the defendants on an alleged cause of action relating to the property passing to them in remainder under the Bell deed, and four of the five plaintiffs are claiming relief against other de-fendants based on transactions relating to property inherited from their father. Surely these are separate and distinct claims of and against different persons, which can not be joined in the same suit without rendering the petition multifarious.

It is not necessary to draw further illustrations of the violation of this rule of pleading from the summary of facts. Neither would it be profitable to spread out the evidence submitted on the interlocutory hearing, as the injunction and receivership compre-hended the various matters which rendered the petition multifa-rious.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*