BRIARCLIFF INC. *et al. v.* KELLEY *et al.*

No. 14883. SEPTEMBER 11, 1944. REHEARING DENIED OCTOBER 7, 1944.

James A. Branch, Thomas B. Branch Jr., and Hirsch, Smith, Kilpatrick, Clay & Cody, for plaintiffs in error.

Mary J. Payne, William F. Buchanan, Powell, Goldstein, Frazer & Murphy, Woodruff, Ward & Etheridge, M. Neil Andrews, Clifford Walker, A. L. Henson, Otis L. Hathcock, John H. Hudson, Estes Doremus, Smith, Smith & Bloodworth, Carl F. Hutcheson, and J. S. Slicer, contra.

ATKINSON, Justice. (After stating the foregoing facts.) ■ The first question to be determined is, whether or not the petition

as amended was subject to the special demurrer of Briarcliff Inc., the old company, on the grounds of misjoinder of parties plaintiff, of parties defendant, and of causes of action, or multifariousness. If a cause of action was set forth against Briarcliff Inc., based on the contracts issued, and a cause of action also against both Briarcliff Inc. and Briarcliff Laundry Inc., based on a conspiracy to defraud, the petition would be subject to demurrer on each ground urged. It is insisted that the original petition, prior to being amended, set forth only a cause of action against Briarcliff Inc., based on a contract, and that subsequently, by amendment, it was sought to add an action based on a conspiracy to defraud. The portions of the petition relied upon for this construction are as follows: In April and May, 1943, the petitioners stored certain fur garments at the laundry, "and received a storage-receipt certificate signed by Briarcliff Inc., in which certificate said company agreed to store said coat . . and insure said coat against loss by fire." The copy of such receipt attached to the petition, showed that it was captioned "Briarcliff Inc." and signed "Briarcliff Inc.," by some one; and that in the corner of the certificate was listed "storage & insurance $......," and in each case some amount was set forth. On the back of the receipt was the following: "Unless otherwise noted herein, the articles shall be insured by the undersigned against loss by fire or burglary."

While the foregoing allegations would seem to make the cause of action one against Briarcliff Inc. only on an action ex contractu, yet these allegations must be considered in connection with all the other averments. The petition as amended is voluminous, and no effort will be made to quote or summarize all such other averments, which stated: the history of the establishment and operation of the laundry prior to its sale by Briarcliff Inc. to Briarcliff Laundry Inc.; the mode of its operation and manner of advertising and use of the name "Briarcliff Laundry;" the relationship between the two concerns; the details of the transfer of office supplies and blank contracts; that no notice of change of ownership was given the public; the ownership of stock in the two institutions; that identical storage receipts had been issued and used by both concerns; that after the fire both institutions joined in sending customers notices as to the disposition of their garments, and the refusal of delivery unless a release of all liability was signed; and

that such conduct was fraudulent and was resulting in loss to the storers of goods. The amendment further alleged that both institutions had collected one cent on each package of laundry for insurance against fire, and that no insurance was carried; that Briarcliff Inc. was a reputable, solvent institution, and that Briarcliff Laundry Inc. was insolvent; that by such acts the defendants perpetrated a fraud in law and in equity upon the patrons of the laundry; that both collected various sums, stating in the face of their receipts that the goods would be insured without carrying any insurance; and that these transactions were a part of a general scheme to defraud.

In determining whether the action is ex contractu or ex delicto, we should not pick out particular paragraphs or allegations of the petition and consider them as being isolated from others contained therein, but each should be construed in the light of its natural and logical relations to all others. *Seals* v. *Augusta Southern Railroad Co.,* 102 *Ga.* 817, 820 (29 S. E. 116). "Where several matters are stated in a petition, not as distinct and unconnected, but as arising 'out of the same transaction or series of transactions, forming one course of dealing, all tending to a single end,' a demurrer for misjoinder of causes of action will not lie." *Grant* v. *Hart,* 192 *Ga.* 153 (4) (14 S. E. 2d, 860).

Considering the amended petition in its entirety, with its chronological history of the operation of the laundry by both the old and the new concerns, the allegations as to the relationship and connection between the two institutions, the enumeration of instances demonstrating the joint conduct of both corporations, and the various and specific charges of a conspiracy to defraud—we construe the allegations in reference to the contract for storage of wearing apparel, not as a specific allegation of a contractual relation upon which the suit is predicated, but as an incident of joint conduct to illustrate and establish a conspiracy to defraud; and accordingly, the court did not err in overruling the demurrer to the petition as containing a misjoinder of parties plaintiff, parties defendant, causes of action, or as being multifarious. Under such a construction of the petition, it becomes unnecessary to pass upon the other grounds of demurrer.

The foregoing represents the views of the majority of this court. I do not concur therein. It is the opinion of each member of the

court that the petition sets forth a cause of action ex delicto, on the basis of a conspiracy to defraud. The majority opinion construes the allegations relating to the contract merely as a matter of inducement, or as one incident of a series of conduct forming a course of dealing, all tending to a single end. To this construction I do not agree. I think the petition plainly and distinctly sets forth a cause of action against Briarcliff Inc. upon a contract, just as clearly as the cause of action is set forth against Briarcliff Inc. and Briarcliff Laundry Inc. for a conspiracy to defraud. The petition alleges four separate and distinct contracts with Briarcliff Inc., a breach of the terms and conditions of each contract, and damages to the petitioners by reason thereof. The plaintiffs could go before a trial court, establish these facts and secure a judgment against Briarcliff Inc. without the introduction of any evidence to establish a conspiracy to defraud between Briarcliff Inc. and Briarcliff Laundry Inc. Had the defendant Briarcliff Inc. not filed a demurrer, but had entered into the hearing upon the merits of the issue, it must necessarily have been prepared to defend against the contracts issued in its name, and also against the allegations of a conspiracy to defraud between it and Briarcliff Laundry Inc. One of the objects of our law on pleading is to afford a defendant an opportunity to ascertain the nature of the complaint against which he will be required to defend; and the trial court should have compelled the plaintiffs to elect upon which branch of their petition they would seek relief.

Nor is this case such a type as comes within the category of those where the breach of a contract becomes a tort, such as *City & Suburban Railway* v. *Brauss,* 70 *Ga.* 368; *Smith* v. *Eubanks,* 72 *Ga.* 280; *Lea* v. *Harris,* 88 *Ga.* 236; *Seals* v. *Augusta Southern Railroad Co.,* supra; *Louisville & Nashville R. Co.* v. *Spinks,* 104 *Ga.* 692 (30 S. E. 968); *Ellis* v. *Taylor,* 172 *Ga.* 830 (159 S. E. 266); *Wall* v. *Wall,* 176 *Ga.* 757 (2) (168 S. E. 893); *Swann* v. *Wright,* 180 *Ga.* 323 (2), 326 (179 S. E. 86); *Manley* v. *Exposition Cotton Mills,* 47 *Ga. App.* 496 (170 S. E. 711). The mere breach of an ordinary contract does not constitute a tort. Only where such contracts create a legal duty, or a relation from which the law implies duties, will the breach constitute a tort. While the contract in the instant case is in the nature of a bailment, yet the suit is predicated, not upon any breach of duty cre-

ated by the relation of bailor and bailee, such as negligence or conversion, but upon a breach of a specific provision under the contract, to wit, to provide insurance. Where an action ex contractu is joined with an action ex delicto, there is a misjoinder of causes of action. *Louisville & Nashville R. Co.* v. *Hurt,* 129 *Ga.* 234 (58 S. E. 706); *Martin* v. *Brown,* 129 *Ga.* 562 (2,-3). (59 S. E. 302); *Wolff* v. *Southern Railway Co.,* 130 *Ga.* 251 (60 S. E. 569); *Montgomery* v. *Alexander Lumber Co.,* 140 *Ga.* 51 (4) (78 S. E. 413). The petition sets forth a cause of action ex contractu against Briarcliff Inc. by four plaintiffs, each with a separate and distinct contract; and therefore constitutes a misjoinder of parties plaintiff, as well as a misjoinder of causes of action, since there is not the necessary common right to be established, as between the plaintiffs, so as to institute a joint suit, for each plaintiff would have a separate and distinct suit. *Payne* v. *West Point Wholesale Grocery Co.,* 151 *Ga.* 46 (105 S. E. 608). A cause of action ex contractu is joined with an action ex delicto, the ex contractu action being against Briarcliff Inc., and the ex delicto action being against both Briarcliff Inc. and Briarcliff Laundry Inc., and therefore the petition is multifarious. *Shingleur* v. *Swift,* 110 *Ga.* 891 (36 S. E. 222); *Van Dyke* v. *Van Dyke,* 120 *Ga.* 984 (48 S. E. 380); *White* v. *North Georgia Electric Co.,* 128 *Ga.* 539 (2) (58 S. E. 33); *Martin* v. *Brown,* supra; *George W. Muller Bank Fixture Co.* v. *Southern Seating & Cabinet Co.,* 147 *Ga.* 106, 113 (92 S. E. 884).

I think that the court erred in overruling the demurrer. I am authorized by Justice Grice to say that he concurs in this dissent.

■ Was the conduct of the old company, the new company, or both, in adding a charge for insurance upon the various accounts of their customers, such a fraud as would impress the proceeds of the fire-insurance policies, carried on the building and machinery of the new company, with an implied trust in favor of the petitioners?

Considering the case from any viewpoint, the contracts or receipts for storage which were delivered to customers became important evidence and might be denominated the keystone around which other facts relate. These storage contracts, delivered by the new company, were the same as those used by the old company. The contract for the storage of furs appeared to be executed by the

old company, as there appeared in print at the top, "Briarcliff Inc.," and at the bottom, "Briarcliff Inc. per . . . . . . . . . .," with the signature of either Doris R. Connally, Elizabeth Cohen, or A. Mayo. The contract covering the storage of woolen garments also appeared to be executed by the old company, as a caption "Briarcliff Inc.," appeared at the top, although only the name or initials of some one appeared at the bottom. On the back of this receipt was the following: "The charge will cover all insurance against fire, theft, and moths. In case of loss or damage, the liability of the company is limited to the declared value set opposite each article." At the time of the sale and transfer of the laundry from the old company to the new company, a large batch of these blank contracts was among the office supplies taken over by the new company, which used them without making any change in the printed form. The evidence was sufficient to establish that they were used with the knowledge of both John H. Candler and Samuel Candler, the officers and owners of all the stock in the new company. There was no evidence that they were used with the knowledge or consent of Asa G. Candler Jr., the president of the old company, though John H. Candler and Samuel Candler were stockholders and directors of the old company, and Samuel Candler was a vice-president.

It is insisted by the plaintiffs in the trial court that the judgment restraining and enjoining the old company and the bank, as trustee, from collecting the proceeds of the $200,000 fire-insurance policies, appointing a receiver for the proceeds of the $200,000 fire-insurance policies, and decreeing the proceeds of these policies to be a trust fund for the payment of claims of the petitioners and others similarly situated, should be sustained on the theory that the proceeds of these policies constitute a trust fund in their favor.

This contention is based upon the fact that the new company charged for fire insurance on each contract for storage of both fur and woolen garments, though it carried no insurance; and also charged one cent on each package of laundry for fire insurance to cover those items. It is insisted that by reason of the customers having paid to the company insurance upon these items, and the company having paid premiums for the $200,000 of fire insurance to cover the building and machinery, the proceeds of this $200,000 of insurance on the building and machinery became impressed with an implied trust in favor of the petitioners. As an addi-

tional reason to support this contention, it is further insisted that the new company charged one cent on each package of laundry for fire insurance, though it carried no adequate fire insurance to cover this contingency. What right of action against the new company this would give to any customer who paid the insurance charge and suffered loss, or whether the collection of these various charges for insurance without supplying the insurance protection amounted to a fraud upon customers paying this charge, is not here directly involved. Such charges for insurance as had previously been paid by other customers could not inure to the benefit of these petitioners, in so far as establishing an implied trust to the fund here involved, even if it be shown that money previously collected from other customers actually was used in purchasing the $200,000 of insurance. At the time of the fire, these petitioners and others similarly situated held storage contracts upon which there was a charge to cover fire insurance, but these charges had not been paid, and consequently the petitioners had not supplied any funds which could form the basis of an implied trust in their favor. *Smith* v. *Manning,* 155 *Ga.* 209 (3) (116 S. E 813).

Accordingly, the court erred in enjoining the Fulton National Bank, as trustee, from collecting the proceeds of the $200,000 of fire-insurance policies, which were carried under the terms of the security deed; and in directing that the receiver proceed with the collection thereof, and that this fund be impressed with a trust for the payment of claims of the petitioners.

■ The petitioners also insist that the old company, by its conduct, was estopped to assert its claim under the security deed to the proceeds of the policies of fire insurance on the building and machinery, or to assert its lien against the property conveyed by the security deed. Regardless of any question of estoppel, the injunction sought as to the defendant Briarcliff Inc. was an effort to enjoin a perfectly solvent corporation. In division one of this opinion, we have ruled that the petition sets out a cause of action against both the old company and the new company as a conspiracy to defraud. This being true, it was error to enjoin and restrain the old company from proceeding to enforce its alleged liens against the property of the new company, irrespective of any question of estoppel.

The court erred in authorizing the receiver to take charge of

the real estate and personalty covered by the security deed; in enjoining the Fulton National Bank, as trustee, from foreclosing the deed, or from making any sale or disposition of property covered thereunder.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Grice and Atkinson, JJ., who dissent from the ruling in the first division of the opinion and the corresponding headnote, and Duckworth, J., disqualified.*