37753. RODGERS *et al. v.* STYLES *et al.*
37755. HARRIS *v.* STYLES *et al.*

126

DECIDED SEPTEMBER 9, 1959.

128

*Powell, Goldstein, Fraser & Murphy, B. D. Murphy, Edward E. Dorsey, Walter D. Sanders,* for plaintiffs in error.

*Robert D. Tisinger, Shirley C. Boykin,* contra.

CARLISLE, Judge (after stating the foregoing facts). These cases are before this court on writs of error, each containing some 50 assignments of error, all of which are insisted upon by counsel for the plaintiffs in error. While there are some variations in the assignments of error between the records, all of the issues which we deem it important and necessary to consider and decide at this time are raised in one form or another in each of the records. Because of these variations, however, this opinion concerns itself only with the issues made by the appeal of the defendants Rodgers and Morgan, and by Henry Harris. Many of the issues raised will not likely recur on another trial. However, the issues which are not expressly passed upon have all been carefully considered and have been adjudged to be without merit.

■ The petition was brought in the name of the individual members of the Carroll County Board of Education acting in their official capacity, and in the name of the State School Building Authority, for the use and benefit of the Carroll County Board of Education. The State School Building Authority is a body corporate with authority to sue and to be sued. Ga.L. 1951, p. 241, et seq.; Code, Ann., § 32-1401 (a), et seq. The petition alleged that the county board had by warranty deed conveyed the property in question to the State School Building Authority prior to the occurrence of this loss; that the State School Building Authority had entered into a lease contract with the school board under the terms of which the property was leased to the board for a period of 20 years with an absolute right of reconveyance to the board at the end of that period. Under the allegations, the lease granted to the board the full rights of use, benefit and occupancy of the premises during the 20-year period, while the State School Building Authority holds, and will continue to hold, legal title to the premises. It appears from the other allegations of the petition that the purpose of

this arrangement was to enable the School Building Authority to invest funds in the property for improvements in the school plant, and that the work which resulted in the destruction of the plant for which this suit is brought was being carried on pursuant to that arrangement. The first ground of demurrer which was overruled and on which the plaintiffs in error insist and on which argument is made before this court, contended, in effect, that the State School Building Authority had no right of action under the facts alleged since it had no interest in the property which could have been damaged, and, consequently, no right of action for the damage done by the fire.

This contention is not meritorious. Under the allegations of the petition, the plaintiffs together hold the entire right of title and interest in the property in question. They have a joint interest in any recovery for the damage resulting from the alleged tortious destruction of the property, and there is nothing in the law which prevents their joining in one action to enforce their respective rights. Paraphrasing what was said in *Western & Atlantic R. Co.* v. *Tate*, 129 *Ga.* 526, 528 (59 S. E. 266), such a joinder could not possibly have hurt the defendants or have deprived them of any rights which they had. The defendants were in no way inconvenienced in making their defense, and as a matter of fact may have been benefited in that they were enabled to have adjudicated in one action their entire liability as to all the parties who might be interested in the property. A recovery on such a suit would be a bar to any subsequent action by any of the plaintiffs, and, indeed, it may well be imagined that had not the School Building Authority been joined in the action, the defendants would have insisted on making it a party so that its rights might be adjudicated in the same action with that adjudicating the rights of the school board, and to avoid a multiplicity of suits. For these reasons the trial court did not err in overruling the third ground of demurrer filed by the defendants Rodgers, Morgan and Harris. See *Hamilton* v. *Evans*, 208 *Ga.* 780 (3) (69 S. E. 2d 739).

Nothing in *Johnson* v. *Lovett*, 31 *Ga.* 187, requires a ruling contrary to that now made. While it is not so alleged in express terms, the position of the State School Building Authority,

under the facts alleged in the petition, is analagous to the position of the holder of a deed to secure debt who has given a bond for title conditioned upon the payment by the grantor thereof of the indebtedness secured by the deed. Certainly, if a third party commits a trespass or injury to the property to which the grantee holds merely a paper title, it cannot be said that he has no enforceable interest therein for which he can recover from the tortfeasor. Compare *Fulton County* v. *Amorous*, 89 *Ga.* 614 (3) (16 S. E. 201) ; *Southern Railway Co.* v. *Ethridge*, 108 *Ga.* 121 (33 S. E. 850) ; *Towaliga Falls Power Co.* v. *Washington*, 136 *Ga.* 397 (1) (71 S. E. 731) ; *City of Atlanta* v. *Callaway*, 137 *Ga.* 495 (73 S. E. 736) ; *Palmer* v. *Pennington*, 179 *Ga.* 76 (175 S. E. 380) ; *City of Atlanta* v. *Atlas Realty Co.*, 17 *Ga. App.* 426 (3) (87 S. E. 698). See also *L. & N. Railroad Co.* v. *Dixon*, 158 *Ga.* 303 (123 S. E. 12), and *Hinson* v. *Seaboard Air-Line Railway Co.*, 38 *Ga. App.* 516 (1) (144 S. E. 384).

■ Each of the defendants filed special demurrers to the petition as a whole on the ground that the same was multifarious and that there was a misjoinder of causes of action and a misjoinder of defendants and that the action against Watson and Yeargan sounded in contract while the action against Rodgers and Morgan and Henry Harris sounded in tort. The trial court overruled these demurrers and this ruling is one of those assigned as error in this court.

These grounds of demurrer were well taken and should have been sustained. "While it is permissible for a plaintiff to embrace several causes of action in one petition in different counts, yet all of them must be of a similar nature. *Cooper* v. *Portner Brewing Co.*, 112 *Ga.* 894 (38 S. E. 91) ; *Gainesville &c. Ry. Co.* v. *Austin*, 122 *Ga.* 823 (50 S. E. 983) ; *Peterson* v. *Lott*, 200 *Ga.* 390 (37 S. E. 2d 358). A cause of action arising ex contractu and one arising ex delicto are not of the same nature and cannot, except in cases of insolvency or nonresidence of the defendant be joined in the same suit, even in different counts. Code § 3-113; *Wolff* v. *Southern Ry. Co.*, 130 *Ga.* 251 (60 S. E. 569) ; *Herring* v. *Smith*, 141 *Ga.* 825 (2) (82 S. E. 132) ; *Martin* v. *Newberry*, 169 *Ga.* 676 (151 S. E. 380) ; *Quitman Cooperage Co.* v. *People's First Nat. Bank*, 178 *Ga.* 90 (172 S. E. 17). Multi-

fariousness is defined in *Nail* v. *Mobley*, 9 *Ga.* 278, 280, as 'improperly joining in one bill distinct and independent matters, and thereby confounding them—as for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill.' For a like definition, see *Martin* v. *Brown*, 129 *Ga.* 562 (59 S. E. 302), where it is also said: 'In a suit for equitable relief the union of distinct causes of action, one arising out of tort, and the other based on contractual liability, renders the petition multifarious.' Applying the quoted definition, the petition in the instant case must be held to be multifarious." *Chisen* v. *Sampeck*, 211 *Ga.* 382, 383 (86 S. E. 2d 210).

It is clear beyond peradventure of doubt that the petition in this case, if it sets forth a cause of action against the defendants Watson and Yeargan, the prime contractors on the job, does so only in contract. Under the allegations of the petition as amended, the defendants Rodgers and Morgan were, as to the defendants Watson and Yeargan, independent contractors not subject to the immediate direction and control of the prime contractors, Watson and Yeargan. Such being the relationship between the two defendants, Watson and Yeargan were not liable for the torts committed by Rodgers and Morgan, or by any of their employees. Code § 105-501. This is true because the allegations of the petition are wholly insufficient to bring the case within any of the exceptions to the general rule embodied in Code § 105-502.

It is contended by the defendants in error that the exception embodied in Code § 105-502 (3) renders the defendant prime contractor liable in tort for the negligence of its subcontractor because the wrongful act was a violation of the duty imposed on the prime contractor, Watson and Yeargan, under the express terms of their contract with the plaintiffs. However, the petition is utterly devoid of any allegations as to what express term or terms of the contract between the plaintiff school board and the defendants Watson and Yeargan were so violated. It is not sufficient, in order to bring a case within the exception set forth in this subsection to merely allege facts which show a

violation of a legal duty common to all people. *Southern Mills* v. *Newton,* 91 *Ga. App.* 738, 742 (87 S. E. 2d 109). Of course, the defendants here had a duty, irrespective of any contractual obligation, not to negligently set fire to and burn property of the plaintiffs. In the circumstances of the case, the defendants had a duty to exercise reasonable and due care in firing the dry closets so as not to let the fire get out of control and burn the building. But there is no allegation in the petition in this case of any specific term of the contract between the plaintiffs and the prime contractor Watson and Yeargan which it may be said that the defendants violated.

Nothing contained in the portion of the contract between the plaintiffs and the defendants, Watson and Yeargan, which is set out in the petition, required Watson and Yeargan personally to perform the particular work which was being done by Rodgers and Morgan, or to refrain from subcontracting that particular job to someone else, or to do it in a particular way. Indeed, if anything, this portion of the contract clearly shows that it contemplated that portions of the job would be subcontracted, since it refers therein to. "The general contractor," and provides that it shall be liable for injury to any person, or persons, or for damage to property suffered on account of "any act or omission of the contractor or any subcontractor" or any of their employees. This provision in the contract may have created a contractual liability on the general contractor to the plaintiffs for damages such as alleged in this petition here, but allegations showing that damages were sustained on account of an independent negligent act or omission of a subcontractor do not show a *violation* of this particular contractual duty, that is, to be liable to the plaintiffs for such damages. Code § 105-502 was codified from *Atlanta & F. Railroad Co.* v. *Kimberly,* 87 *Ga.* 161, 165 (13 S. E. 277, 27 Am. St. Rep. 231). That case stated the general rule and the exceptions thereto. With respect to the third exception the court referred to and cited Water Company *v.* Ware, 16 Wall, 566. While the Water Company case may have been based on facts which, when considered in connection with the ruling therein, could be said to intimate a different result from that which we now reach in this case, the ruling in the

*Atlanta & F. Railroad Co.* case was, nevertheless, in accordance with what we now hold. To the extent that the Supreme Court of the United States may be said to have enunciated a contrary ruling, it is clear that our Supreme Court in its ruling in the *Atlanta Railroad* case with regard to this exception did not arrive at the interpretation contended for by the defendants in error.

So far as we have been able to ascertain, Code § 105-502 (3) has been interpreted and applied since its codification in only one case, that being *Southern Mills* v. *Newton,* cited above. Based on that interpretation and application, we think that this section means that, for example, as applied to this case, had the contract between the plaintiffs and the defendants, Watson and Yeargan, expressly provided that the dry closets would not be burned out by the defendants or by any subcontractor under the defendants Watson and Yeargan, but would be cleaned merely by hauling the refuse (?) therefrom, or that, if burned out, it would not be done without first having on hand buckets of water or without first notifying the fire department and having a fire engine stand by, and if, with those terms being in force, the defendants Watson and Yeargan had turned the job over to the defendants Rodgers and Morgan and their employees without advising them of the existence of such provisions of the prime contract, and Rodgers and Morgan had proceeded to burn out the closets despite any inhibition against that procedure or had done so without taking those precautionary measures expressly provided for in the supposed contract, then a case within the meaning and intent of this subsection might have been made if properly alleged in the petition. However, we have no such situation alleged here, and under the ruling in the *Southern Mills* case, supra, the allegations are insufficient to bring the case within this subsection.

Neither do the allegations bring the case within the first two subsections of § 105-502. Neither the overall job of remodeling and modernizing the school nor the specific task performed in connection therewith of burning out the dry closets can be said to have been wrongful in itself, or if done in an ordinary manner result in a nuisance, nor can it be said that according to

previous knowledge and experience the work to be done was in its nature dangerous to others however carefully performed.

In paragraphs 11 (b) and 11 (c) of the petition, it is alleged: "The relationship of prime contractor and subcontractor in connection with the renovation of plaintiff's Temple School plant was created and then existent between Watson & Yeargan, as prime contractor and Rodgers & Morgan as subcontractor. The work specified to be done under the terms of their contract was at the time said building was burned the joint responsibility and liability of said prime and subcontractor, they having created the relationship and a liability in the nature of agency or master and servant, as to the work to be performed by each of said defendants, and the defendant Henry Harris. The work to be performed and renovations to be carried out by all of defendants were in the area and on the same facility and plant that each of the defendants were performing the work under the terms of the contract. The burning of said building was the result of the performance of an integral part of the work under the prime contract, necessary and essential to the work of the subcontractor and the prime contractor. The work was performed by all said defendants jointly and for the benefit of each contractor, and was essential to the compliance with the prime construction contract. Defendant, Watson & Yeargan, as general contractor was in general possession, dominion and control of the premises and was preparing to and performing work thereon required by their contract as prime contractor, in the same building and area on said school plant, and they did employ and direct the subcontractor and Henry Harris to proceed to perform the work, which was under the supervision of the prime contractor and its agents, servants and employees. The said work was done negligently. The said defendants, and all of them, failed to exercise ordinary care in carrying on the work to preserve the building and keep fire out of it, at said time and place as hereinafter alleged.

"Watson & Yeargan was the employer of Rodgers & Morgan and Henry Harris, and the school was burned because of the wrongful act and acts specified in the petition which was in violation of a duty imposed by express contract upon the em-

ployer, Watson & Yeargan, and did violate the specific provisions of the contract between State School Building Authority, as owner, the terms of which said contract are well known to each of the said defendants, and liability is imposed. The relationship created voluntarily between Watson & Yeargan and Rodgers and Morgan, being established by their own voluntary contract and agreement, required the performance of the contract between the owner and the general contractor faithfully and in accordance with its terms, and the burning of said school building is in violation of the terms thereof and within the provisions of Code Section 105-502 (3) of the Code of Georgia." These allegations were insufficient to bring the case within the exception embodied in subsection 5 of this section of the Code, in that they failed to show that the prime contractor retained the right to direct or control the time and manner of executing the work, or that the prime contractor interfered or assumed to control so as to create the relation of master and servant between the prime contractor and the subcontractor. These allegations are insufficient to support the bare conclusion alleged that the relation of employer and employee existed between the prime contractor and the subcontractor. It is sufficient to say that the contract between Watson and Yeargan and Rodgers and Morgan, which is set out in one of the amendments to the petition, clearly shows that Rodgers and Morgan were independent contractors not subject to the control of Watson and Yeargan as to the time, manner and method of doing the work, and it clearly shows that Watson and Yeargan merely had the right to require certain definite results to be accomplished on or before a certain and specified date. The trial court sustained special demurrers to those allegations of count 1 of the petition which sought to show that the relation of employer and employee existed between Watson and Yeargan and Rodgers, Morgan and Harris. Notwithstanding this action of the trial court, the petition when construed against the plaintiffs, as it must be on demurrer, shows, when considered in connection with the exhibits thereto, which must prevail over contrary allegations made by way of conclusion, that the action against Watson and Yeargan is ex contractu, since the facts alleged as thus construed are not sufficient

to show that Watson and Yeargan had in fact any right under the contract to control the time, manner and method of the doing of the work by Rodgers, Morgan and their employees. The special facts shown by the petition and the exhibits attached thereto must prevail over general conclusions at variance therewith. *Waller* v. *Wright Contracting Co.*, 91 *Ga. App.* 709 (1) (86 S. E. 2d 721).

It follows from the foregoing that the cause of action alleged against the defendants Watson and Yeargan was solely for breach of contract. Since there was no privity of contract between the plaintiffs and the other defendants in the case, and since the plaintiff's case against the other defendants rests solely on alleged negligent conduct on their part, the case against such other defendants necessarily is one in tort. It follows that the trial court erred in overruling the special demurrers of the defendants which raised the questions of multifariousness, and of misjoinder of parties and of causes of action.

Two other grounds of special demurrer which were overruled by the trial court and to which judgment thereon exception is made and insisted on in this court stem from allegations in the petition which arose by reason of the joinder of causes of action and joinder of parties defendant which under the ruling heretofore made was improper. For this reason, the trial court erred in overruling grounds 4 and 5 of the demurrer filed by the defendants Rodgers and Morgan on October 9, 1958, and by Harris on October 25, 1958.

■ The defendants Rodgers and Morgan and Harris demurred specially to certain allegations of the petition which alleged that the defendants, under the contract with the plaintiffs, were required to carry liability insurance. These demurrers were sustained and the paragraph containing these allegations was stricken. Thereafter, by written demurrer, the defendants moved the court to require the plaintiffs to replead and rewrite their petition, and to physically expunge and delete therefrom all references to insurance. These demurrers were overruled and this judgment is one of the errors assigned.

In special grounds 5, 8 and 9 of the motion for a new trial error was assigned on the overruling of motions for mistrial

made by counsel for the defendants when testimony was given to the jury by two of the plaintiffs on direct examination that one of the defendants had called them on the night after the fire had occurred about 2:30 or 3 in the afternoon and had told the witnesses in effect that they needn't worry about the destruction of the building, that they (meaning the defendant who was making the call) were insured and would take care of the loss, and would rebuild the damaged schoolhouse. In special ground 7 error was assigned on the overruling of the motion for mistrial after one of the plaintiffs had testified that before the defendants could proceed with the work which they had contracted to do after notification their bid was accepted that it was necessary that they furnish a performance and payment bond with the builder's risk coverage, owner's protective liability, contractor's protective liability, contractor's public liability, workmen's compensation and a list of the subcontractors.

In the 18th, 19th and 20th grounds of the motion for a new trial, error is assigned on the failure of the court to grant a mistrial on motion of the defendants when on three separate occasions referred to in these grounds counsel for the plaintiffs argued to the jury that the defense was merely a fight between two bonding companies as to who was going to pay the costs of repairing the building, that the jury ought to find against the defendants and let the bonding companies and their lawyers settle among themselves as to who was going to pay and that certain witnesses had testified as to the defendant Yeargan's statement about being insured.

It is contended that all of these references to insurance, in one form or another, were not referrable to any issue made by the pleadings or evidence that they injected irrelevant, immaterial, inflammatory and prejudicial matter into the case which tended to relax the conscience of the jurors trying the case and render them less responsible to their oaths to do impartial justice between the parties. These assignments of error are all meritorious and require a reversal of the judgment. Conceding, but not deciding, that had the action in this case been one ex contractu strictly and brought against the defendants Watson and Yeargan alone, and that had the plaintiff by appropriate

pleading shown some provision of the contract between the parties which required the defendants to carry a policy of liability insurance, or had the case been one simply of an action on the contractor's bond, it might have been appropriate, or, indeed, essential to plaintiff's cause of action to have pleaded and proved the existence of such a bond, this case, however, is not of that nature, and under the circumstances it was inappropriate to inject the matter of insurance into the case in any form. The law applicable to the issues made by these assignments of error was plainly and succinctly stated by Judge Worrill in *McRee* v. *Atlanta Paper Co.*, 84 *Ga. App.* 181 (65 S. E. 2d 832). No particular purpose would be served by repeating or further reviewing the authorities there cited.

While a single instance like any one of those complained of in the motion for new trial standing alone might not have warranted the reversal of the case, the facts shown here indicate a studied effort on the part of counsel for the plaintiff to get the fact of insurance before the jury in one form or another and to impress their minds with that fact by repetition. No amount of "cautionary instructions" by the trial judge was likely to be effective in removing the harmful impression thus hammered home by the repeated reference to insurance and bonding companies, and the jury, no doubt, well understood that this was in reality a case against rich insurance *companies* (not just one) who would pay any judgment rendered. The plaintiffs in error by timely and appropriate demurrer and motion raised the question as to the reference to insurance in the pleadings. The trial court should have stricken from the petition, and should have required the plaintiff to purge physically therefrom all reference to an insurance policy, or policies. Each time insurance was injected into the case by the witnesses a timely motion for a mistrial was made. It cannot be said that the evidence thus objected to related to statements by the defendant as a part of the res gestae, where the evidence showed these statements were made several hours after the occurrence when the defendant called two of the school board members on the telephone after they had returned home from the fire, and at about 9 at night and made the statements to which they testified. Even if these

statements could otherwise be said to be a part of the res gestae, they were not connected with the transaction, nor did they have any bearing on it, nor did they serve to illustrate it in any manner. Code § 38-305; *Augusta & S. R. Co.* v. *Randall,* 79 *Ga.* 304, 310 (4 S. E. 674). Under these circumstances, the trial court erred in overruling the motion for the defendants to strike and physically expunge from the petition all references to insurance, and in thereafter refusing to grant a mistrial upon timely motions made by counsel for the plaintiff in error when counsel for the plaintiff elicited evidence of insurance from witnesses as complained of in the 5th, 7th, 8th and 9th grounds of the motion for new trial, and in refusing to grant a mistrial on timely motion of counsel for the defendants when counsel for the plaintiffs in their argument emphasized and re-emphasized the matter of insurance as complained of in the 18th, 19th and 20th grounds of the motion for new trial.

■ Code § 38-1801 provides in part: "In the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party, or anyone for whose immediate benefit such suit is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such suit is prosecuted or defended, or officer or agent of a corporation when a corporation is such party, or for whose benefit such suit is prosecuted or defended, a witness, with the privilege of subjecting such witness to a thorough and sifting examination, and with the further privilege of impeachment, as if the witness had testified in his own behalf and were being cross-examined." The provisions of the foregoing Code section are broad enough to include agents of the plaintiff school board in the instant case, and the principal of the school which was destroyed by the fire and who had the keys thereto, and who informed the defendants' agent as to the manner and method of cleaning out the dry closets by building a fire therein was such an agent of the school board as to be within the meaning and intent of this section. See *Atlanta Joint Terminals* v. *Knight,* 98 *Ga. App.* 482, 485 (106 S. E. 2d 417). Accordingly, the court erred in overruling special grounds 10 and 11 of the defendants' motion for a new trial which complained of the refusal of the court to permit a

cross-examination of the witness Livingston when he was called by the defendants under the provisions of this Code section.

■ In Case No. 37755 (Henry Harris), special ground 21 of the motion for a new trial complains because the trial court erred in overruling and denying defendants' motion for a mistrial after counsel for the plaintiff made the following argument to the jury: "And, we (referring to defendants) want Henry Harris out so that any judgment the jury render in his case would be void and Henry goes out then. He happened to [be] working up there. He's a citizen of your county. I'm not censuring Henry. But, the most adroit and, I now take off my hat and pay my respects to the most skillful thing done in this case, and that's the handling and representation by Walter Sanders of Henry Harris. They would booby trap you in this case if they could into saying that we find against everybody except old Henry and then the judgment could be void as all get out." It is contended that this statement was not referable to any issue made by the pleadings or evidence adduced upon the trial, that it was prejudicial to the defendant Harris in that among other things it tended to lead the jurors to return a verdict against him upon the suggestion that if they did not do so their entire verdict rendered in the case would be void rather than returning a verdict upon the issues of the case as their opinion of the evidence and the law given them in charge might lead them. This ground shows that counsel for the defendant made a proper and timely motion for a mistrial, which was denied. There is no question but that this argument to the jury had no relevancy to the issues made, either by the pleadings or by the evidence. It, undoubtedly, was calculated to impress on the jury the vital role played in the case by Henry Harris, and to lead them to render a verdict against Harris without regard to whether the evidence showed that he was guilty of culpable neglect in the premises. This is particularly true, where the evidence makes a close and doubtful question as to liability, as was the case here with respect to the defendant Harris. This argument may well have tipped the scales in favor of a verdict against Harris when the jury might otherwise have been inclined in considering the case strictly upon its merits, to have let him

out. The injection of this kind of argument into the case ought to be discouraged. See *United Motor Freight Terminal Co.* v. *Hixon*, 76 *Ga. App.* 653, 654 (47 S. E. 2d 171). The trial court erred in overruling special ground 21 of the motion for a new trial filed by the defendant Henry Harris.

■ Another special ground of the motion for new trial complains of a portion of the charge on the ground that it gave the jury an incorrect measure of damages. While this portion may have been subject to some criticism as not being apt and as not containing an accurate statement of the law with regard to the measure of damages, it is not apparent that harmful error was committed by the court in overruling this ground of the motion. There are other assignments of error in the case, all of which are insisted on by counsel for the plaintiff in error before this court. However, the foregoing opinion substantially answers all of the questions which need to be considered at this time. Since the case may be tried again, all of the other questions which are raised by the exceptions to rulings on the demurrers and by the exceptions to the overruling of the motion for new trial are not likely to recur on another trial. For these reasons, none of the other questions so raised will be passed on at this time.

*Judgments reversed. Gardner, P. J., and Townsend, J., concur.*