WOLFF, for use, etc., *v.* SOUTHERN RAILWAY COMPANY.

A cause of action arising ex contractu and a cause of action arising ex
delicto can not be joined in the same suit.

Argued June 7, 1907.—Decided February 28, 1908.

Action for breach of contract, etc.    Before Judge Felton.    Bibb
superior court.    December 3, 1906.

Edward Wolff, for the use of Salomon Brothers & Company,
brought an action against the Southern Railway Company.    The
petition contained four separate counts, each being in lettered para-
graphs.    As it stood after it was finally amended, each count there-
in, after alleging, in paragraph (*a*), that the defendant "is a rail-
road corporation doing business as a common carrier in said
county," etc., alleged:    "(*b*)    That on March 20, 1902, in Bibb
County, Georgia, petitioner entered into a contract with the de-
fendant, by which the defendant undertook to transport 1400
bales of compressed cotton linters to Brunswick, Georgia, and
thence via the Strachan Line of steamers, expecting to sail about
the 10th of April, to Bremen, Germany.    Freight on said cotton

.contracted to be paid the defendant was on a basis of 40 c. per hundred from Macon; that said contract was entered into upon the stipulation of the defendant in said contract that it had purchased from the Strachan Line for petitioner room upon said boat, or ship, about to sail on April 7th. (c)   That petitioner was acting, in making said contract, for his usees, Salomon Brothers & Company.   (d) That the defendant railway company understood, at the time of making said contract, that petitioner was to purchase said linters at various points in the States of Georgia and Alabama for said shipment; that the cotton was not to be shipped through Macon, but the distance from Macon to Brunswick was the basis upon which said freight rates were to be determined on all cotton shipped under said contract.   (e)   That in pursuance of said contract, petitioner being induced by the representation and agreement as aforesaid to transport said cotton on said steamer so about to sail on said date, petitioner himself and through other agents of the said usees purchased for said usees 1400 bales of cotton linters and delivered the same to the defendant in ample time, under said contract, for the defendant to have transported said cotton to Brunswick and to have loaded the same on the Strachan Line of Steamers expecting to sale about April 10, 1902.   (f)   That among said purchases was a shipment of 412 bales of linters purchased from Knight, Yancey & Company, in Decatur, Alabama, and which was delivered to the defendant by Knight, Yancey & Company for petitioner's usees on March 21, 1902, which was in ample time for the defendant to have transported the same to Brunswick in accordance with their contract to load the same upon said steamers.   That at the time of the delivery of said cotton to the defendant, or its connecting lines for it, the defendant was notified that said cotton had been purchased under said contract, and was to be shipped under and in accordance with said contract to Salomon Brothers & Company, the consignees thereof, and who were petitioner's usees, and said company agreed with petitioner to receive said cotton on said contract and so to ship the same.   (g) That the defendant railway company, concealing from said Knight, Yancey & Company its contract with petitioner, and failing to disclose the same to said Knight, Yancey & Company, gave to said Knight, Yancey & Company, on the receipt of said 412 bales of cotton, a bill of lading in which it was stipulated, in fraud

of the contract made by petitioner with said railway company, that the said railway company's liability would terminate on the delivery of said property to the steamship or master, agent or servant, or to the steamship company, or the steamship pier, which bill of lading with said clause therein was accepted by said Knight, Yancey & Company without notice of said contract with petitioner; that said bill of lading further failed to stipulate, in fraud of petitioner's rights under said contract, that said cotton was to be transported to said Brunswick and delivered to said Strachan Line of Steamships expecting to sail on or about April 10, 1902, which fact was likewise unknown to said Knight, Yancey & Company. (h) That on or about April 10, 1902, the Strachan Line of Steamers, in which defendant by its contract should have purchased room for petitioner, sailed from Brunswick to Bremen, Germany, and reached the latter port on or about May 1, 1902. (i) That the defendant company failed to have said 412 bales of cotton hereinbefore described placed upon said Strachan Line of Steamers that did so sail on or about April 10th, and did procure the same to be loaded on a ship of said line leaving on or about July 10, 1902, and which latter ship did not reach Bremen until about the 31st day of July, 1902. (j) That said 412 bales of cotton linters weighed 198,785 pounds; that the market price of said cotton between the first day of May, 1902, and the 31st day of July, 1902, in Bremen declined 3/4 cent per pound and thereby petitioner incurred a loss of $1,490.88 in the market value of said cotton between said time, and the further loss of $64.88 interest, making a total loss of $1,555.56, by reason of said delay." After making these allegations, the first count continued as follows: "(k) That by reason of the breach of said contract of the defendant in. not having said cotton placed upon said line of steamers expecting to sail on April 10, 1902, the defendant railway company became liable to petitioner in said sum of $1,555.56 loss incurred by petitioner as aforesaid. (l) That petitioner has made a demand on the: defendant railway company for said sum, and the defendant refused to pay the same, whereby the defendant became liable to petitioner in said sum of $1,555.56 with interest thereon from July 31, 1902." The third count concluded as follows: "(k) Petitioner further shows, that, on said loss having accrued upon petitioner, that petitioner notified the defendant railway company thereof

and demanded of said railway company the evidence that it had entered into said contract for room upon said Strachan Line of Steamers for petitioner, in order that petitioner might hold said Strachan Line responsible and liable for failing and refusing to receive said cotton and transport the same on the ship sailing April 10; and the said defendant railway company failed and refused to furnish petitioner said contract, or evidence that said contract was ever made, and thus rendered petitioner unable to hold said Strachan Line liable, whereby the defendant became liable to petitioner in said sum aforesaid."

The defendant demurred to the petition, upon various grounds. The court sustained the demurrer "upon each and all the grounds thereof," and dismissed the petition. The plaintiff sued out a writ of error, complaining of this ruling.

*Hardeman & Jones*, for plaintiff.

*N. E. & W. A. Harris*, for defendant.

FISH, C. J. (After stating the facts.) One ground of the demurrer was: "The plaintiff has sought to combine a suit on a contract with a suit in tort, which is not authorized by law." As, in our opinion, this ground of the demurrer was well taken, we deem it unnecessary to deal with the others. It is contended by counsel for plaintiff in error that each of the four counts of the petition sets forth a cause of action arising ex contractu. Counsel for defendant in error contend that the first count sounds in contract, but the second and third sound in tort. We agree with counsel in the construction which they place upon the first count; it is evidently based upon an alleged breach of the contract which the plaintiff claims the defendant made with him, to transport the cotton from the point of shipment to Brunswick, Ga., and from thence, across the sea, to Bremen, Germany. We are also of opinion that the contention of counsel for defendant in error, that the third count is in tort, is well taken. While this count and the first count allege the same contract between the plaintiff and the defendant, and the same set of circumstances connected therewith, until, in each instance, the real gist of the action is reached, yet when the third count sets forth the particular injury upon which the plaintiff bases his alleged right to recover damages of the defendant, it does so by alleging: "Petitioner further shows, that, on said loss having accrued upon petitioner, [he] notified the de-

fendant . . thereof and demanded . . the evidence that it had entered into said contract for room upon said Strachan Line of Steamers for petitioner, in order that petitioner might hold said Strachan Line responsible and liable for failing and refusing to receive said cotton and transport the same in the ship sailing April 10; and the said defendant . . failed and refused to furnish petitioner said contract, or evidence that said contract was ever made, and thus rendered petitioner unable to hold said Strachan Line liable, whereby the defendant became liable to petitioner in said sum aforesaid." Clearly this is not a count based upon a breach of the alleged contract of the defendant "to transport [the cotton] to Brunswick, Georgia, and thence via the Strachan Line of Steamers expecting to sail about the 10th of April, to Bremen, Germany." Instead of being based upon a breach of a contract under the terms of which the defendant was bound to transport the cotton from Brunswick, Georgia, to Bremen, Germany, it is apparently founded upon a breach of duty which the defendant owed the plaintiff in reference to a contract which it had made, *for him,* with the steamship company, and for a breach of which by the steamship company the plaintiff sought to hold that company liable. He demanded of the railway company, not damages for its failure to have the cotton transported to Bremen, Germany, in accordance with a contract between them, but the evidence of a contract made by it, for him, with the steamship company, for the transportation of the cotton from Brunswick, Georgia, to Bremen, Germany, in order that he might be properly prepared to hold the steamship company liable in damages for its failure to comply with the contract made with it for him by the railway company. He could not hold the steamship company liable for a breach of a contract which he had made, not with it, but with the railway company; but he might well hold the steamship company liable for a breach of a contract which the railway company, as his agent, had made for him with the steamship company. This count, properly construed, proceeds upon the theory that the railway company made for the plaintiff a contract with the steamship company, and that upon the failure of the latter company to perform this contract, whereby he suffered loss, he had the right to demand and receive of the agent who acted for him in making this contract, the evidence of such contract in its posses-

sion, in order that he might use the same for the purpose of holding the steamship company responsible and liable for his loss. Certainly this count of the petition set forth no cause of action, at all, arising out of the contract between the plaintiff and the defendant; and it seems equally clear that it did sufficiently set out a cause of action in favor of a principal against his unfaithful agent, to withstand a general demurrer, and, upon special demurrer, could be so amended as to make the allegations as to the agency direct and positive, instead of matter of necessary inference from the facts alleged. Counsel for plaintiff in error themselves construe the allegations of the third count as showing the relation of principal and agent between the plaintiff and the defendant, relative to the purchase by defendant of room for the plaintiff's cotton on the steamship of the Strachan Line sailing from Brunswick for Bremen on April 10, 1902. In their brief they say that a failure by the vessel's owner to receive the cotton "was a breach by the line, on which the consignor, the principal of the railway company, could sue;" and that it was the duty of defendant "to furnish its principal, the consignor, evidence that it contracted for space on the vessel, so that, if the carrier did not sue, the consignor might sue for the failure of the vessel's owner to receive the cotton." The general law imposes upon an agent certain legal duties. One of these duties is, "to give his principal reasonable and timely notice of every fact coming to his knowledge in reference to his agency, and which it may be material for the principal to know in order for the protection or preservation of his interests." Mechem on Agency, §538. Most assuredly it is the legal duty of an agent, who has made a contract for his principal, to furnish the latter with all the evidence and information in reference to such contract in his possession. And if he refuses to do so, he is liable to the principal for whatever damages he sustains by this breach of the legal duty of the agent. In Andrews' Stephen's Pleading, 107, this definition of a tort is given: "A tort, in contemplation of English law, consists in a violation of a duty imposed by the general law upon all persons occupying the relation which is involved in a given transaction or res gestæ." Our Civil Code, §3807, declares a tort to be "a legal wrong committed upon the person or property independent of contract;" and that such legal wrong may be "The violation of some private obligation by

which damage accrues to the individual." The "private obliga-
tion" here referred to evidently means a private duty arising either
from the law or from a relation created by contract express or
implied. Civil Code, §3810. It is well recognized that a tort
may result from the violation of a duty which is itself the conse-
quence of a contract (see Civil Code, §3812), or, as expressed in
*City etc. Railway* v. *Brauss*, 70 *Ga.* 368: "If a contract imposes
a legal duty upon a person, the neglect of that duty is a tort
founded upon a contract. In such a case the liability arises out
of a breach of duty incident to and created by the contract, but
is only dependent upon the contract to the extent necessary to
raise the duty. The tort consists in the breach of duty." *Louis-
ville R. Co.* v. *Spinks,* 104 *Ga.* 692 (30 S. E. 968); *Milledgeville
Water Co.* v. *Fowler,* 129 *Ga.* 111 (58 S. E. 643).

It follows that as this count was based upon a cause of action
arising ex delicto, and the first count was based upon a cause of
action arising ex contractu, the petition was properly dismissed,
upon demurrer, for misjoinder of causes of action.

*Judgment affirmed. All the Justices concur, except Holden, J.,
who did not preside.*