PETRONELLA VANDENBERG, SOMETIMES KNOWN AS PETRENELLA VAN DEN BERG, PLAINTIFF-RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, A CORPORATION OF THE COMMONWEALTH OF MASSACHUSETTS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 4, 1957—Decided December 5, 1957.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Edward J. Russo* argued the cause for defendant-appellant (*Messrs. Nugent and Rollenhagen,* attorneys).

*Mr. John B. Applegate* argued the cause for plaintiff-respondent (*Messrs. Besson & Applegate,* attorneys).

The opinion of the court was delivered by
CONFORD, J. A. D. Plaintiff recovered against the defendant in the Law Division as beneficiary under a group

life insurance policy. The insured was John H. Savoyne, a merchant seaman, who died February 2, 1955. The insurance policy was an agreement dated January 14, 1951 between the defendant and Trustees of the NMU Pension and Welfare Plan, New York, New York, entered into by the latter as a result of a collective bargaining agreement between National Maritime Union of America, CIO, and various employers of merchant seamen for whom the union is collective bargaining representative. The premiums for the life insurance were paid by the Trustees out of a fund to which employers contributed. The Trustees contracting for the insurance include both employer-trustees and union-trustees. The sole question involved on this appeal is whether an amendment of the agreement of insurance operative to shorten by three months the coverage by the policy of the life of Savoyne became effective without notice to him of the amendment. Judge Graf, sitting without a jury, held in the negative, and we agree with the result so determined.

The policy recites that it is delivered in New York and is governed by the laws of that jurisdiction. It automatically covers any employee of an employer-member of the plan when such employee completes 20 days on the payroll of one or more employers within any period of six consecutive calendar months. At its inception the policy language, so far as here material, had the effect of automatically terminating the life insurance of an employee on the last day of the *second* calendar quarter following the calendar quarter in which his last day of employment occurred. On August 18, 1954 the policy was amended so as to change the foregoing reference to the *second* calendar quarter, etc., to the *first* calendar quarter, etc. The policy, moreover, provides that any employee, upon written application to the company within 31 days after the termination of his insurance, "shall be entitled to have issued to him by the company, without evidence of insurability" an individual policy of life insurance for the same amount as under the group policy, provided payment of the premium is made within the same

31 day period. The amendment left this provision intact. A certificate summarizing the insurance agreement and certifying to the coverage thereunder was furnished by the Company to the Trustees and delivered to the insured, as required by the agreement. This included information as to the time of termination of the insurance under the policy and as to the right of conversion just mentioned.

Savoyne's last services as an employee of any employer under the policy were rendered August 20, 1954. He was never given notice of the amendment referred to. It is agreed by the parties that if the amendment is legally effective in his case, his death on February 2, 1955 occurred too late for recovery of the death benefit; *per contra,* if a proper construction of the policy called for notice to Savoyne of the amendment as a condition of its applicability in his case.

The original policy provides: "Termination of this Policy or amendments thereto shall not require the consent of any employee or beneficiary." The physical contract document is a printed form which contains the language "or notice to," but stricken out, after the words "consent of."

At the trial a New York lawyer testified for defendant and gave it as his opinion, citing court decisions, that under New York law the amendment was effective without notice to the insured. In a letter opinion finding in favor of plaintiff the trial court found that there was no New York decision applicable to the case presented but concluded that the giving of notice was an implied requirement of the amending procedure in view of the deletion of the verbiage concerning notice in the original document and of the fact that on one prior occasion when the policy was amended notices were sent to all employees insured.

The controversy presented by this case falls into the general field of inquiry as to whether and when cancellation, modification or substitution of a master group policy requires consent by or notice to an insured employee. See *Annotation,* 142 *A. L. R.* 1288 (1943), which reflects the wide contrariety of viewpoint to be found in the reported

cases. Analogies to orthodox insurance cases are difficult because of the introduction of another contracting party, the employer or other employee-representative, and the assumption by that party of many of the functions which would normally fall to the insured. *Note: "Cancellation of Group Insurance Policy by Employer without Consent of Employee,"* 49 *Yale L. J.* 585, 587 (1940). The distinction made in some of the cases based upon the circumstance that the insured does not contribute to the premiums, *Vance on Insurance* (3d ed. 1951), *p.* 1042, is not properly significant here, as the origin of the policy in collective bargaining in effect constitutes the insurance a part of the compensation of the employee-insured and thus paid for by his labor. See 49 *Yale L. J., op. cit., supra* (at *p.* 590); *Keane v. Aetna Life Insurance Co. of Hartford, Conn.,* 22 *N. J. Super.* 296, 305 (*App. Div.* 1952). Moreover, the narrowed issue emerging from the precise position taken by the plaintiff makes it unnecessary to pinpoint the nature of the interest or status of either the insured or the beneficiary under the policy. It is conceded that the amendment did not require the consent of the insured or the beneficiary, and it is not argued that, apart from the provisions of the policy, the nature of insured's interest in the insurance contract made it mandatory that he be given notice of the amendment. The position taken is merely that, as a matter of fair construction of the intent of the contracting parties, the provision for notice of an amendment of this purport and effect is to be read into the agreement by reasonable implication in the light of the surrounding circumstances.

As noted, the policy is to be construed under the law of New York. No New York cases are cited or discoverable, however, which appear to be in point. *Section* 204, *par.* 3 of the New York Insurance Law (27 *McKinney's Consol. Laws of N. Y., Part* 2, *p.* 39) requires that a certificate-holder under a group policy containing a right of conversion to another type of life insurance within a specified time after the happening of an event be notified of the privilege, within certain specified periods after the happening of the

event, failing which, the time allowed for exercising the conversion expires at the end of 90 days after the happening of the event. Compare our own statute of cognate purport, *L.* 1950, *c.* 301. No question concerning the direct application of the New York statute to the rights of the parties has been argued on this appeal (the statute was not cited), and we give it no consideration in that sense. The legislation does, however, indicate an affirmative public policy in the State of New York for notification to insureds under group policies of the occurrence of the event which incepts the running of the period for exercise of a right of conversion from group to ordinary life insurance such as inured to the insured under the policy in this case. Some thought directed towards the disadvantageous position of an insured in such a situation as this, if ignorant of the policy amendment, will evoke the reaction that his resulting plight is so incongruous with the philosophy underlying the New York statute that the insurance policy should not be presumed as intended to tolerate such a result if reasonably avoidable. After Savoyne concluded his last employment services on August 20, 1954, he presumably knew that under the policy (as it stood prior to August 18, 1954) his coverage would expire at the end of March 1955, and that he could convert to ordinary life insurance within 31 days thereafter without regard to insurable physical condition. Not knowing of the policy amendment which reduced the coverage period, and, automatically, the time period for conversion, by three months, he may well have been intending to exercise the conversion privilege at the time of his death on February 2, 1955. In this connection, incidentally, the policy also provided that the company would pay the death benefit if the insured died during the 31 day conversion period even if the employee had not made application for conversion. But here death came two days too late for operation of that provision, if the policy amendment is applicable.

The gross unfairness to an insured of effectuation of such a policy amendment as that here involved without notice to the insured, under the circumstances obtaining, while not

of itself compelling a construction precluding effectuation without notice, strongly bespeaks a contractual intent of that tenor. It is hardly to be assumed that the Trustees and the Insurance Company, while bestowing a valuable privilege on the insured with one hand, would be intending to snatch it from him, he all unaware, with the other.

While no decided cases in New York or elsewhere are precisely in point, there are several decisions which in rationale support a construction of the policy which would permit recovery here. In *Poch v. Equitable Life Assurance Society*, 343 *Pa.* 119, 22 *A. 2d* 590, 142 *A. L. R.* 1279 (*Sup. Ct.* 1941), involving a group insurance policy providing for both life and disability insurance, it was held that the insurance company and the contracting employee association would not be permitted to modify the policy so as to eliminate the disability provision without giving the employee notice thereof. The provision for notice was implied so as to permit the employee to "timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere" (22 *A. 2d*, at page 594). In *Emerick v. Connecticut General Life Insurance Co.*, 120 *Conn.* 60, 179 *A.* 335, 105 *A. L. R.* 413 (*Sup. Ct. Err.* 1935), it was held that there could be no termination of life insurance under a group policy based upon the termination of employment by the employer during a layoff period, without notice to the employee, where the policy contained a provision, similar to that in the policy *sub judice*, giving the employee 31 days after termination of employment to convert to individual insurance. The court pointed out that this was necessary in order to assure the employee his opportunity to continue his insurance without having to re-establish insurability. Basically in accord are *Nick v. Travelers Insurance Co.*, 354 *Mo.* 376, 189 *S. W. 2d* 532 (*Sup. Ct.* 1945); *Thompson v. Pacific Mills*, 141 *S. C.* 303, 139 *S. E.* 619, 55 *A. L. R.* 1237 (*Sup. Ct.* 1927); *Hinkler v. Equitable Life Assurance Soc. of United States*,

61 *Ohio App.* 140, 22 *N. E. 2d* 451 (*Ct. App.* 1938); *Parks v. Prudential Ins. Co.,* 103 *F. Supp.* 493 (*D. C. E. D. Tenn.* 1951); *Aetna Life Ins. Co. v. Wilson,* 190 *Okl.* 363, 123 *P. 2d* 656 (*Sup. Ct.* 1942); *Johnson v. Inter-Ocean Casualty Co.,* 112 *W. Va.* 396, 164 *S. E.* 411 (*Sup. Ct.* 1932); but see *Szymanski v. John Hancock Mutual Life Insurance Co.,* 304 *Mich.* 483, 8 *N. W. 2d* 146, 145 *A. L. R.* 947 (*Sup. Ct.* 1943) (denying recovery where coverage terminated with termination of employment, and employee knew his employment had terminated); *Kloidt v. Metropolitan Life Insurance Co.,* 18 *N. J. Misc.* 661 (*Sup. Ct.* 1939) (where the employee had ample notice of the change in policy); *Trimble v. Metropolitan Life Ins. Co.,* 305 *Mich.* 172, 9 *N. W. 2d* 49 (*Sup. Ct.* 1943); *Kimbal v. Travelers Ins. Co.,* 151 *Fla.* 786, 10 *So. 2d* 728 (*Sup. Ct.* 1942); cf. *Zaunczkowski v. Travelers Ins. Co.,* 3 *N. J. Super.* 442 (*App. Div.* 1949); *Keane v. Aetna Life Insurance Co. of Hartford, Conn., supra.*

The only New York case we find dealing in any way with the problem of notice to the insured in a group insurance situation is *Chrosniak v. Metropolitan Life Insurance Co.,* 121 *Misc.* 453, 201 *N. Y. Supp.* 211 (*Sup. Ct.* 1923), affirmed 209 *App. Div.* 846, 204 *N. Y. Supp.* 898 (*App. Div.* 1924). There the policy provided for immediate termination of insurance upon cessation of "active employment" and the court held that when the employee went on strike he was no longer actively employed and therefore no longer covered by the policy, without the necessity of express notification to him by the company of that status. The decision has no application here. Neither have any of the other New York cases cited by the defendant. The decisions dealing with the rights of the beneficiary *vis a vis* the insured are not relevant in this case. Here the beneficiary takes through the insured, and it is the rights of the latter which are being essentially determined in this litigation.

 We consider that the striking of the words, "or notice to," from the original policy, as noted above, is not without some significance in construing the policy before us. Where the language of a contract is ambiguous and the excision of

specific verbiage therefrom before execution is a logical aid towards ascertainment of intent, that fact may be given such weight in its construction as it rationally deserves. See 17 *C. J. S. Contracts* § 317, *p.* 734; *Curtis v. M. L. Virden Lumber Co.,* 159 *Miss.* 454, 132 *So.* 341 (*Sup. Ct.* 1931); *Hobart v. Dodge,* 10 *Me.* 156 (*Sup. Jud. Ct.* 1883); *Rowe v. Chesapeake Mineral Co.,* 61 *F. Supp.* 773 (*D. C. E. D. Ky.* 1945), affirmed 156 *F. 2d* 752 (6 *Cir.* 1946), *certiorari* denied 329 *U. S.* 776, 67 *S. Ct.* 190, 91 *L. Ed.* 667 (1946); *Hughes v. Samedan Oil Corp.,* 166 *F. 2d* 871 (10 *Cir.* 1948). The policy before us is unquestionably ambiguous in the respect disputed in this case. The striking of the language which would have expressly negated a requirement of notice to the insured of any amendment of the policy of any nature whatever may well have been motivated by the consideration that, while notice to the insured of some kinds of amendment would not serve any purpose and therefore should not be mandatory, notice of other kinds of amendment well ought to be. Thus the deleted verbiage in the present policy at least tends to refute the idea that the parties intended that notice to an insured of an amendment should never be necessary. From this inference there is easy progression to the conclusion that notice of an amendment such as this one, knowledge of which by an insured was so vital to the exercise of his rights under the policy, was intended thereby to be given him as a condition of its effectuation.

██ There being no reliable indication of the law of New York as to this matter to be found in New York sources, we are obliged to apply the common law. This, in our judgment, requires the conclusion that the policy before us is properly to be construed to preclude the effectuation of the amendment in question as to this insured and beneficiary without notice to the insured.

Judgment affirmed.