36336. DAWES MINING COMPANY, INC. v. CALLAHAN.

HILL, Justice.

Certiorari was granted to review *Dawes Mining Co. v. Callahan,* 154 Ga. App. 229 (267 SE2d 830) (1980), in which the Court of Appeals held that when an employer changes its group health insurance policy on employees and the employees are incorrectly advised that the coverage under the new policy is the same as under the old policy, an employee can sue his employer for breach of an implied contract to continue the same insurance coverage, and can recover such damages as result from the difference in coverage. The facts are set forth in the Court of Appeals' opinion and are restated here for convenience.

The evidence shows that appellee Callahan was first employed by appellant Dawes Mining Co. in 1957 as an hourly wage earner. A few years later Callahan started participating in Dawes' group health insurance program. The insurance paid for medical and hospital expenses incurred by Callahan and his dependents, with half the premiums paid for by Callahan by deductions from his pay and the other half by Dawes. Dawes processed employee claims under the

policy to the insurer.

In 1975, without consulting the employees, Dawes changed coverage from the existing insurer to another insurance company.[1] The employees were told of the change and to come to the office to sign up with the new insurer. The local representative of Dawes and a representative of the new insurer were present in the office. The insurer's representative said the coverage was the same as under the former policy and said nothing about exclusion of coverage for pre-existing illnesses.[2]

Callahan, who could not read but could sign his name, signed an application for insurance as directed by the insurer's representative. Some weeks later he received an insurance card as evidence of the insurance. Unknown to Callahan at the time, the new insurance master policy had a provision which prohibited payment of medical expenses incurred as a result of pre-existing illnesses until the policy had been in effect a certain period of time.[3] Within that excluded period, Callahan's wife was hospitalized for a pre-existing illness and, after six months and several hospitalizations, died. After mistakenly paying some of the expenses and demanding repayment, the new insurer invoked the pre-existing illness exclusion and refused payment of any of the medical and hospital expenses, which were in excess of $14,000.

Having no recourse against the insurer, Callahan brought this suit against Dawes. The jury returned a verdict for Callahan for an amount equal to the medical and hospital expenses incurred, Dawes' motions for judgment notwithstanding the verdict and new trial were denied, and Dawes appealed. The Court of Appeals affirmed and we granted certiorari. As the Court of Appeals noted, this is a case of first impression in this state.

Our first inquiry is as to the relationships between employee, employer and the insurer issuing a group insurance policy. Without

---

[1] The employer had changed coverage on several prior occasions. Callahan's claims had always been promptly paid.

[2] The employees were not told they could continue their existing group life insurance on an individual basis (Code Ann. § 56-2704 (9)) or whether they could continue their group health insurance on the same basis.

[3] The policy excludes expenses incurred "for an injury or sickness for which the insured person received medical care, treatment, or recommended treatment within 90 days preceding the effective date of his insurance hereunder; this provision will apply until the insured person completes a period of 90 consecutive days ending after the effective date of his insurance hereunder, during which he has received no medical care, treatment, or recommended treatment or until his insurance hereunder has been in effect for twenty-four (24) months, whichever is earlier."

undertaking to be fully comprehensive, it can be said that group insurance is insurance coverage for a number of individuals by means of a single or blanket policy usually at a lower rate than for individuals. 17 EGL 203, Insurance, § 457; Code Ann. § 56-3101. Employee groups are frequently covered by group insurance.

There is a disagreement among the states as to whether an employee insured under a group contract is a party to the contract, or a third party beneficiary of the contract between the employer and the insurer. 22 Louisiana Law Rev. 169, 171 (1961). Some jurisdictions decide this question on the basis of whether the employee contributes toward payment of the premium. Id.

In *Carruth v. Aetna Life Ins. Co.,* 157 Ga. 608 (1a) (122 SE 226) (1924), the court held that an employee insured under a group policy was a third party beneficiary of the contract between the employer and insurer and as such was entitled to sue on the contract. In that case the employee made no contribution toward payment of the premium.

Where, as here, the employee contributes toward payment of the premium either the employee is a party to the insurance contract or has a contract with the employer by which the employer agrees, for the consideration paid by the employee, to provide insurance coverage to the employee. We need not finally resolve the status of a contributing employee because we find that the relationship of the employee to the insurer is not controlling here. Rather, it is the status of the employer and the relationship between the employer and the employee which is controlling.

The Court of Appeals has held that for some purposes the employer is an agent of the group insurer. *Equitable Life Assur. Society v. Florence,* 47 Ga. App. 711, 715 (171 SE 317) (1933); *Cason v. Aetna Life Ins. Co.,* 91 Ga. App. 323 (1) (85 SE2d 568) (1954); *Pilot Life Ins. Co. v. McCrary,* 103 Ga. App. 549, 550 (120 SE2d 134) (1961); *Piedmont Southern Life Ins. Co. v. Gunter,* 108 Ga. App. 236, 237 (132 SE2d 527) (1963). That court has held that for other purposes the employer is an agent of the employee. *Lancaster v. Travelers Ins. Co.,* 54 Ga. App. 718, 724-725 (189 SE 79) (1936); *Thigpen v. Metropolitan Life Ins. Co.,* 57 Ga. App. 405 (1) (195 SE 591) (1938); see also *Blaylock v. Prudential Ins. Co.,* 84 Ga. App. 641, 644 (67 SE2d 173) (1951). This difference in treatment was recognized and dealt with in *Cason v. Aetna Life Ins. Co.,* supra.

The dividing line appears to be this: Once the group policy has been issued, the employer is the agent of the insurer in determining which persons are its employees and are thereby eligible to participate as a member of the group, *Equitable Life v. Florence,* supra, in determining which of its employees are regularly

performing their duties and are thereby eligible to receive certificates of increased insurance, *Cason v. Aetna Life,* supra, and in determining which of its employees are employed full time, *Pilot Life v. McCrary,* supra. These cases are governed by the rule that the employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy, and thus the insurance company has imputed knowledge of facts which the employer knows. *Cason v. Aetna Life,* supra; *Piedmont Southern Life v. Gunter,* supra. The Court of Appeals did not overrule or refer to these cases in *Schulman v. Federated Life Ins. Co.,* 154 Ga. App. 479 (268 SE2d 704) (1980).

However, in selecting a group insurer, in selecting a policy, in selecting coverages to be afforded by the insurer, the employer is negotiating with the prospective insurer; there is no contract in force; and the employer cannot be the agent of the insurer. It has been said that " 'When procuring the policy [and] obtaining applications of employees . . . employers act not as agents of the insurer but for their employees or for themselves.' " *Thigpen v. Metropolitan Life,* supra; *Blaylock v. Prudential,* supra.

Hence we find that the relationship which is decisive in this case is that in procuring the group policy and obtaining employee applications, the employer acts as an agent of the employees where the employees will be contributing toward payment of the premium.[4] Some of the cases and authorities (see below), suggest that the employer should be found to be a trustee, but the duty of the trustee would be the same as the duty of the agent as will appear hereinafter.

The duties of an agent to his principal are fairly well defined. "The duties of an agent depend initially on his contract with the principal, but in every agency relationship the law imposes certain duties whether they are expressly included in the contract or not." 1 EGL 496, Agency, § 80. "As a fiduciary the agent is required to act primarily for the benefit of the principal in matters connected with the agency. Among the agent's fiduciary duties is . . . to act with proper skill and diligence, and not to make a personal profit from the agency. Moreover, the agent is subject to the duty of loyalty to his principal and must deal fairly with him at all times." 1 EGL 452, Agency, § 9. "The principal has the right to expect from his agent 'a full revelation of all pertinent facts which might jeopardize their

---

[4]Whether the employee is to become a party to the insurance contract, or a contract with the employer to provide insurance (see above), is thus immaterial; the result would be the same in either event.

rights in the property entrusted to the defendant (agent)'... Thus it has been held that an agent having made a contract for his principal must pass on to him, 'all the evidence and information in reference to such contract in his possession.' . . . The general rule is that all material facts within the agent's knowledge concerning the subject matter of the agency or any transaction into which he enters in his representative capacity must be communicated to the principal." 1 EGL 502, Agency, § 92; See, *Wolff v. Southern R. Co.,* 130 Ga. 251, 256 (60 SE 569) (1908); *Williams v. Moore-Gaunt Co.,* 3 Ga. App. 756 (60 SE 372) (1908). One reason an agent is under a duty to communicate to his principal all pertinent and material facts concerning any transaction entered into on behalf of the principal is that knowledge of an agent is imputed to the principal by law (Code § 4-309) and only by the agent's performance of this duty can the principal acquire actual knowledge and govern or protect himself accordingly (see Code § 4-307).

Notwithstanding our recognition of the employer as the agent of the employee for purposes of this case, the employer seeks to defend on grounds the employee could have discovered the change had he read the policy as required by law.[5] However, Code Ann. § 37-707 provides that "Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith; such as partners, *principal and agent,* etc." (Emphasis supplied.) In *Williams v. Moore-Gaunt Co.,* supra, the court said: "The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the utmost loyalty and good faith to his principal." Where a confidential relationship is found to exist between employer and employee or principal and agent, the duty to read does not bar recovery against the employer or agent. *Cochran v. Murrah,* supra (fn. 5); *McWhorter, Ltd. v. Irvin,* 154 Ga. App. 89 (267 SE2d 630) (1980); cert. dismissed *Irvin v. McWhorter, Ltd.,* 246 Ga. 229 (1980). We are persuaded by these decisions and find that the employer owed the employee a duty which cannot be ignored simply because the employee, pursuant to instruction, signed the application for insurance without reading the new master policy.

We therefore hold that when changing a group policy insuring

---

[5]It is well settled under Georgia law that a contracting party has a duty to read the contract or to exercise reasonable care in the event he cannot read. See *Morrison v. Roberts,* 195 Ga. 45 (23 SE2d 164) (1942), and citations; *Robertson v. Panlos,* 208 Ga.

contributing employees and obtaining the applications of those employees, the employer acts as an agent of the employees, *Thigpen v. Metropolitan Life,* supra; *Blaylock v. Prudential,* supra, and as such is under a duty to notify the employees of differences between the old and new policies and of any rights the employees may have to continue the old insurance on an individual basis. We hold further that where this duty is breached, an employee can recover such damages as result from the difference in coverage. Cases from other jurisdictions show that the issue of whether an employee is entitled to notice of policy modification or cancellation remained unsettled for many years (see 55 ALR 1245, 1248, and 68 ALR2d 249, 266-274 for discussion). The weight of authority now is that notice is required. See 1 Appleman, Insurance Law & Practice (Supp.) 64, § 43.

In Quinten v. United States Steel Corp., 186 Pa. Super. 384 (142 A2d 370) (1958), the employee paid premiums on a group life policy for 15 years. When he became mentally ill, his children requested that the employer apply their father's vacation pay to pay the premiums, which the employer did at first. Later, before the vacation pay was fully paid out and without notice to the employee or his beneficiaries, the employer terminated the employment and cancelled the insurance. The court held that for failure to give notice the employer was liable in damages in the amount of the cancelled life insurance. See also Nick v. Travelers Ins. Co., 354 Mo. 376 (189 SW2d 532, 537-538) (1945).

In Moore v. Peninsular Life Ins. Co., 213 S2d 721 (Fla. 1968), Moore was covered by a group life policy. He suffered a stroke and became totally disabled. The life policy provided for waiver of premiums upon total disability. It also allowed an employee to convert to an individual policy within 31 days of termination without evidence of insurability. The employer cancelled the group policy without notice to Moore. After Moore's death his widow sued his former employer. The court found that the employer was under a duty to advise Moore of the change in his insurance status. See also Lindgren v. Metropolitan Life Ins. Co., 57 Ill. App. 2d 315 (206 NE2d 734) (1965); McGinnis v. Bankers Life Co., 39 A.D.2d 393 (334 NYS2d 270) (1972); compare Van Ostrand v. National Life Assurance Co.,

---

116, 120 (65 SE2d 400) (1951); *Cochran v. Murrah,* 235 Ga. 304, 305 (219 SE2d 421) (1975); *Simmons v. Wooten,* 241 Ga. 518 (246 SE2d 639) (1978). By making this observation we are not deciding that all members of the insured group are under a duty to read the master policy. We merely are saying that if the duty to read were otherwise applicable, that duty is inapplicable to the insured group for the reasons which follow. The trial court therefore did not err in refusing to give defendant's requests to charge as to the duty to read.

371 NYS2d 51 (82 Misc. 2d 829) (1975).

In De Leon v. Aetna Life Ins. Co., 88 NYS2d 415 (194 Misc. 953) (1949), the employee was temporarily laid off due to lack of materials and supplies, his group life insurance was cancelled without notice to him, he returned and worked for three years until he suffered a fatal illness. The court found the employer liable for damages in the amount of the life insurance, due to the employer's wrongful cancellation of the insurance. In a similar case, Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60 (179 A 335) (1935), Emerick was temporarily laid off in February. In October the employer terminated his employment for lack of work, without notice, and notified the insurer that his insurance was cancelled. Emerick died that same October. There the court said (179 A at 338): "If the employer could terminate the status of an employee, who was at the time temporarily laid off or absent on leave, simply by notifying the [insurance] company that it had done so, without notice to him, he might very likely lose the benefit of the provision [of conversion] . . . We cannot assume that either the company or the employer intended so to jeopardize the apparent right given to the employee. In order to make that right one of assured benefit to the employee, knowledge on his part of the termination of his employment would be necessary."[6] In Lingren v. Metropolitan Life Ins. Co., supra, the court noted that the employee was entitled to know whether any conversion privileges were available or to seek adequate protection elsewhere (206 NE2d at 736).

In Greer v. Continental Casualty Co., 347 S2d 70 (La. App. 1977), the employee contributed to a disability policy which contained a single deduction. The new policy contained a second deduction of which Greer was not notified and which amounted to a further deduction of $300 per month for Greer. The employee sued his employer and the insurance company. The trial court denied relief and the appellate court reversed, saying as to the employer (347 S2d at 72): "We do not hold that an employer-policyholder has no right to terminate or modify a group health and accident policy it has purchased for its employees [citations omitted]. We hold that an employer policyholder of a group health and accident policy is obligated to inform the insured employee of the termination or

---

[6]As the acting head of Dawes Mining Co. testified, although he had not been involved in the change of insurers, ". . . it is normal procedure, when you change carriers, that you never dare change a carrier until it is understood by the carrier, between the insurance company that one will take over full coverage that the other company [had]. . ."

modification of benefits under the policy."[7]

As noted in 68 ALR2d 249, 269, the majority of cases involving contributory policies hold that the employer may not, without reasonable notice to the employee, cancel or modify a group policy so as to deprive the employee of rights under that policy. Although this rule has never been expressly adopted by the Georgia courts, it is consistent with the dividing line established in *Thigpen v. Metropolitan Life,* supra. The case of *Johnson v. Metropolitan Life Ins. Co.,* 52 Ga. App. 759 (184 SE 392) (1936), was a suit against the insurer and the statement therein that the employee was not entitled to notice from the employer (52 Ga. App. at 764) was dicta.

Although we disagree with the Court of Appeals that the employer is bound by an implied agreement to maintain the same group insurance coverage when it changes insurers, that court did not err in affirming the judgment in favor of the employee.

*Judgment affirmed. All the Justices concur, except Bowles and Clarke, JJ., who dissent.*

ARGUED JULY 14, 1980 — DECIDED OCTOBER 8, 1980.

*Steven E. Scheer,* for appellant.

*Charles H. Brown, Susan E. Warren, Kenneth S. McBurnett,* for appellee.

---

[7]Though not before us in this case because the insurer is not a party to this action, several cases have held the insurer liable for failure to give notice to the employee. See, Fassio v. Montana Physicians' Service, 170 Mont. 320 (553 P2d 998) (1976); Wilson v. Prudential Ins. Co., 144 N. J. Super. 497 (366 A2d 357) (1976); Harrison v. Ins. Co. of N. A., 294 Ala. 387 (318 S2d 253) (1975); Vandenberg v. John Hancock Mutual Life Ins. Co., 48 N. J. Super. 1 (136 A2d 661, 665) (1957); Hinkler v. Equitable Life Assur. Soc., 61 Ohio App. 140 (22 NE2d 451) (1938); Butler v. Equitable Life Assur. Soc., 93 SW2d 1019 (Mo. 1936); Hayes v. Equitable Life Assur. Soc., 235 Mo. App. 1261, (150 SW2d 1113) (1941); Neider v. Continental Assur. Co., 213 La. 621, (35 S2d 237) (1948); Aetna Life Ins. Co. v. Wilson, 190 Okla. 363 (123 P2d 656) (1942); Poch v. Equitable Life Assur. Soc., 343 Pa. 119 (22 A2d 590) (1941); Lindgren v. Metropolitan Life Ins. Co., supra; Ogden v. Continental Casualty Co., 208 Kan. 806 (494 P2d 1169) (1972). The issue of notice was not present in *Curd v. Travelers Ins. Co.,* 51 Ga. App. 306 (180 SE 249) (1935). Compare *Cutledge v. Aetna Life Ins. Co.,* 53 Ga. App. 473, 475 (186 SE 208) (1936).