## A94A1670. BRANDON v. MAYFIELD.
(452 SE2d 181)

ANDREWS, Judge.

Brandon appeals from the grant of Mayfield's motion for summary judgment and denial of her motion for partial summary judgment. Brandon was sued by Humana Hospital for sums owed as the result of surgery on her left knee in June 1991. Brandon then filed her third-party complaint against her employer at the time, Mayfield d/b/a Family Practice of Lithonia (Mayfield). Cross-motions for summary judgment were filed and the court denied Brandon's and granted Mayfield's, concluding that Mayfield had breached no duty to Brandon regarding the provision of group medical coverage.

The following facts are not contested. Brandon had surgery on her left knee in 1983. Thereafter, she worked for Mayfield as a licensed practical nurse and the director of nursing from September 1987 until December 1991. On October 19, 1989, she filled out an application for group health insurance, to be provided by Mayfield at no cost to employees. Anthem issued a policy and Brandon and the other employees received booklets explaining the provided coverage as well as insurance cards. This policy continued in force until its termination by Mayfield, effective at midnight on April 30, 1991.

On March 11, 1991, prior to cancellation of Anthem coverage, Brandon, along with the other employees of Mayfield, filled out applications for group health insurance with Metropolitan Insurance Company (Met). Mitchell, Met's agent, was present at the doctor's office for the purpose of taking the applications and discussing any questions with the employees. Brandon acknowledges filling out the Met application, but states that she was not told the ending and beginning dates of the respective policies. On April 18, 1991, Brandon sustained an injury to her left knee for which she sought treatment initially from a doctor in Mayfield's group practice.

Met's group health coverage became effective on May 1, 1991. On May 2, 1991, Mitchell brought the insurance cards and policy booklets to Mayfield's employees, including Brandon, for the Met coverage.

On June 7, 1991, Brandon had surgery on her left knee at Humana. Her post-operative diagnosis was a "torn [medial] meniscus." Her 1983 operation had also been for this condition. Met refused to cover the 1991 operation, contending it was a pre-existing condition which had not been revealed on the application, based either on the 1983 surgery or the April 18, 1991 injury. Mitchell, Met's

agent, stated in his affidavit[1] that all employees, including Brandon, were told that all pre-existing conditions *revealed on their application* would be covered by Met. (Emphasis supplied.) As issued, however, the Met policy included in the record states that "MEDICAL CARE BENEFITS FOR PRE-EXISTING CONDITIONS — No benefits shall be payable for any services rendered during the first 12 months of coverage for any sickness or injury the symptoms of which were evident during the 12 months immediately preceding the effective date of the Employee's coverage. Symptoms shall be considered as evidence if there were clear, distinct symptom or symptoms of the . . . injury demonstrable prior to the effective date of the Employee's coverage and which in the opinion of a legally qualified physician, would (1) indicate that the . . . injury probably began and manifested itself before such effective date. . . ."

Anthem refused to pay for the June 1991 surgery, stating that "Your employer had cancelled his group coverage when you received this care. For this reason, it is not covered."

In her third-party complaint, Brandon asserted that her employment contract was breached because of Mayfield's failure to inform her of termination of the Anthem coverage and by cancelling her coverage with Anthem "so as to deprive [Brandon] of rights to benefits under that policy." Further, she asserted that Mayfield did not notify her of changes in her health insurance coverage from Anthem to Met within 30 days of April 30, 1991, as required by OCGA § 33-24-21.1 (e). Mayfield's motion for summary judgment addressed both grounds and was granted.

1. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.] A [third-party] *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.]" (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

We note first that the trial court, instead of viewing the facts with all inferences in Brandon's favor on Mayfield's motion, has erroneously proceeded to make credibility and other factual decisions.

---

[1] Discussed below in Division 4.

This, however, does not preclude our consideration of the record and our de novo determination of whether summary judgment in favor of Mayfield was appropriate or whether, instead, genuine issues of material fact remain for jury resolution. *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (1) (392 SE2d 535) (1990).

2. OCGA § 33-24-21.1, "Group accident and sickness contracts; conversion privilege and continuation right provisions," was enacted in 1986 and applied to all policies issued after July 1986. Prior to that enactment, however, as acknowledged by Mayfield, there existed and still exists in Georgia certain fiduciary duties owed by the employer to the employee regarding group health insurance.

In *Dawes Mining Co. v. Callahan*, 246 Ga. 531 (272 SE2d 267) (1980), employee Callahan began working for Dawes in 1957 and started participating in the employer-provided group health insurance a few years later.

"In 1975, without consulting the employees, Dawes changed coverage from the existing insurer to another insurance company. The employees were told of the change and to come to the office to sign up with the new insurer. The local representative of Dawes and a representative of the new insurer were present in the office. The insurer's representative said the coverage was the same as under the former policy and said nothing about exclusion of coverage for pre-existing illnesses. Callahan . . . could not read. . . ." (Footnotes omitted.) *Dawes*, supra at 532. In fact, the new policy had a pre-existing condition exclusion requiring no treatment of such a condition for 90 days before coverage would begin under the new policy. During the 90 days, Callahan's wife became ill with a pre-existing condition and eventually died. When the new insurer refused coverage due to this clause, Callahan sued Dawes to recover the expenses of his wife's illness.

The Supreme Court upheld the jury verdict in favor of Callahan and concluded that, after insurance is procured by an employer, that employer acts as an agent of the insurer for purposes of determining which employees are eligible for coverage, employed full-time, etc. "However, in selecting a group insurer, in selecting a policy, in selecting coverages to be afforded by the insurer, the employer is negotiating with the prospective insurer; there is no contract in force; and the employer cannot be the agent of the insurer. It has been said that ' "When procuring the policy (and) obtaining applications of employees . . . employers act not as agents of the insurer but for their employees or for themselves." ' *Thigpen v. Metropolitan Life*, [57 Ga. App. 405 (1) (195 SE 591) (1938)]; [cit.]" *Dawes*, supra at 534.

Noting Dawes' defense that Callahan could have discovered the change if he had read the new policy, the Supreme Court instead relied on OCGA § 23-2-58 to recognize a duty of utmost good faith due

from employer to employee.

"Where a confidential relationship is found to exist between employer and employee or principal and agent, the duty to read does not bar recovery against the employer or agent. [Cits.] We are persuaded by these decisions and find that the employer owed the employee a duty which cannot be ignored simply because the employee, pursuant to instruction, signed the application for insurance without reading the new master policy.

We therefore hold that when changing a group policy insuring contributing employees and obtaining the applications of those employees, the *employer acts as an agent of the employees, [cits.] and as such is under a duty to notify the employees of differences between the old and new policies and of any rights the employees may have to continue the old insurance on an individual basis.* We hold further that where this duty is breached, an employee can recover such damages as result from the difference in coverage." (Emphasis supplied.) *Dawes,* supra at 535-536.

Brandon's affidavit in support of her motion for summary judgment states that neither "Mayfield nor anyone else notified me of the changes in coverage under the p[o]licy with Met . . . that the Met replacement . . . would not cover my pre-existing injury." A review of the record reveals that Mayfield himself was under the impression that the Met policy would cover pre-existing conditions, though the policy, quoted supra, clearly does not.

This factual dispute, in and of itself, is sufficient to preclude the grant of summary judgment to Mayfield based on breach of fiduciary duty discussed in *Dawes.*

Further, the case relied upon by the trial court, *Jenkins v. Hogan,* 206 Ga. App. 294 (424 SE2d 898) (1992), is factually inapposite. There, the employee was terminated and removed from the group insurance policy. The employee had the booklet for the policy which included rights to conversion, etc. The employer did not procure new group insurance upon the expiration of that policy's term. Therefore, the employer had no obligation to apprise her of any changes between the two nor did the employer misrepresent any provisions of the prior policy and misrepresent any of her rights thereunder.

The present situation is more comparable to *A & P Transp. v. Dean,* 212 Ga. App. 351 (441 SE2d 818) (1994) and *City of Brunswick v. Carney,* 187 Ga. App. 634 (371 SE2d 201) (1988). In *Dean,* the employee had given his insurance application to A & P for processing. Because A & P was considering changing insurers, however, the application was forwarded only to the potential new insurer and not the current one. When the new one declined to insure the group, Dean was left without coverage for his wife who had been hospitalized in the interim. He was allowed to recover under *Dawes.* In *Carney,* the

employee was seriously injured and unable to return to work while her employer was providing group coverage by Sentry. Because of her inability to return, the employer terminated her in April 1984, after which it allowed the Sentry policy to lapse and obtained a new carrier under which she was not insured. Again, after a jury trial, recovery from the employer was allowed. See *Calhoun v. Kut-Kwick Corp.*, 172 Ga. App. 511 (323 SE2d 699) (1984).

Therefore, considering the factual disputes and the trial court's inappropriate reliance on *Jenkins*, the grant of summary judgment to Mayfield on the *Dawes* claim was error.

3. The ruling of the trial court on the claim asserted under OCGA § 33-24-21.1 is also based on improper resolution of contested facts, e.g., including when Brandon became aware of the Met coverage, whether there were any appreciable differences in the Anthem and Met policies, whether such differences were explained, whether she had participated in deciding to obtain the new coverage, and what she and other employees had been told by Mitchell of Met about pre-existing conditions.

Therefore, this portion of the court's order is also reversed.

4. There is another procedural impediment to the grant of Mayfield's summary judgment. Mayfield's motion for summary judgment was filed on October 5, 1993. The affidavit of Met agent Mitchell was not filed until November 23, 1993. Hearing on Mayfield's motion had been set by rule nisi for December 1, 1993. In a supplemental response to Mayfield's motion, filed December 1, 1993, Brandon objected to consideration of the late filed affidavit. Brandon had previously filed a motion to strike portions of Mayfield's affidavits which she contended, properly, were hearsay and inadmissible.

Since Mayfield's supplemental affidavit was not filed 30 days before the time fixed for the hearing, OCGA § 9-11-56 (c), it was not properly considered by the trial court. *Corry v. Robinson*, 207 Ga. App. 167, 170 (2) (427 SE2d 507) (1993); *Gunter v. Hamilton Bank of Upper East Tenn.*, 201 Ga. App. 379, 381 (411 SE2d 115) (1991).

*Judgment reversed. Beasley, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 2, 1994 —
RECONSIDERATION DENIED DECEMBER 19, 1994.

*Cheeley & King, John P. Cheeley, Joseph E. Cheeley III*, for appellant.

*C. Alan Mullinax*, for appellee.